**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 06-1781**

---

MOZAFAR H. DAVANI,

Plaintiff - Appellant,

versus

WITT CLEMENT, in his official capacity as
Secretary, Virginia Department of
Transportation; STEVEN E. WELCH; WILLIAM V.
JOHNSON, JR.,

Defendants - Appellees,

and

VIRGINIA DEPARTMENT OF TRANSPORTATION,

Defendant.

---

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria. Claude M. Hilton, Senior
District Judge. (1:04-cv-01397-CMH)

---

Argued: October 31, 2007          Decided: February 6, 2008

---

Before WILLIAMS, Chief Judge, and NIEMEYER and SHEDD, Circuit
Judges.

---

Affirmed by unpublished per curiam opinion. Judge Shedd wrote a
dissenting opinion.

---

**ARGUED:** Michael Wayne Beasley, Falls Church, Virginia, for Appellant. Ronald Nicholas Regnery, Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellees. **ON BRIEF:** Robert F. McDonnell, Attorney General, Maureen Riley Matsen, Deputy Attorney General, Peter R. Messitt, Senior Assistant Attorney General/Chief, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Mozafar Davani commenced this action to redress what he alleges was an unlawful termination of his employment with the Virginia Department of Transportation on April 22, 2003. The Department asserts that it discharged Davani because it had given him three separate "Group II Written Notices," which are notices of disciplinary action for conduct warranting discharge, the most recent on April 7, 2003. The third notice was given to him for failing to follow instructions to investigate issues relevant to the presence of utilities at a construction site. Davani claims, however, that in discharging him, the Department of Transportation discriminated against him on the basis of his race (Middle Eastern), national origin (Iran), and religion (Muslim); retaliated against him for filing complaints with the Equal Employment Opportunity Commission; and violated state law by conspiring to injure his reputation.

Although Davani had previously filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), he elected to challenge his discharge through state employee grievance procedures, even while the EEOC investigation was still pending. That state administrative process led to the conclusion, affirmed by a Virginia state court, that Davani's discharge was justified, was not contrary to law, and was not based on any unlawful discrimination.

3

After the EEOC concluded its investigation about a year later, Davani commenced the present action. The district court dismissed Davani's complaint, concluding that it was barred by principles of collateral estoppel and res judicata, based on the determinations by the Virginia agency and the state court that Davani's claims were without merit. This appeal followed, and we now affirm.

The district court had previously dismissed Davani's complaint in this case under the Rooker-Feldman doctrine. In light of the Supreme Court's subsequent decision in Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005), however, we vacated the district court's decision and remanded the case to the district court to consider the alternative arguments raised by the defendants, based on principles of collateral estoppel and res judicata. See Davani v. Va. Dep't of Transp., 434 F.3d 712, 720 (4th Cir. 2006) (noting that "prudence counsel[ed] that, because of the undeveloped state of the record, we refrain from [addressing the alternative arguments] at [that] time"). After considering the alternative issues, the district court has now concluded that Davani's present claims of discrimination and retaliation were litigated and rejected in state proceedings and affirmed by the state court, and that this action is therefore precluded.

Under Virginia law, the decision of a state administrative law judge ("ALJ"), following an administrative proceeding, is treated as the equivalent of a state court determination; it carries the

4

same weight as a jury's verdict and will not be disturbed on appeal unless it is plainly wrong or without evidence to support it. See Willis v. Magette, 491 S.E.2d 735, 736 (Va. 1997); see also Univ. of Tenn. v. Elliott, 478 U.S. 788, 799 (1986) ("[W]hen a state agency acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts" (internal quotation marks and citation omitted)). In addition, a state circuit court's review of an ALJ decision constitutes a valid state court judgment to which federal courts must give the same preclusive effect that another state court would, under the principle stated above. See Davenport v. N.C. Dep't of Transp., 3 F.3d 89, 93 n.4 (4th Cir. 1993) ("28 U.S.C. § 1738 requires application of state preclusion law . . . where, as here, the state administrative decision has been judicially reviewed . . .").

Having carefully reviewed the record in this case, we agree with the district court that Davani's claims are now barred. The ALJ's findings that "no credible evidence was presented suggesting that the [Department of Transportation] disciplined [Davani] for any impermissible reason" can be understood only as a rejection of his evidence introduced during the administrative hearing, including the voluminous collection of exhibits he submitted, to

5

support his claim that the Department had subjected him to an ongoing campaign of discrimination and retaliation since 2001. Although Davani's counsel claimed at the hearing before the ALJ that such issues were not before the ALJ -- asserting that the only issue presented was the propriety of the third Group II Written Notice -- he nonetheless proceeded to describe for the ALJ precisely the same history of discrimination and retaliation that he now presents in his federal complaint. The ALJ had the authority and the responsibility to consider this broader evidence as potential mitigation of the Department's disciplinary action against Davani based on the third Group II Written Notice. And the ALJ specifically ruled that this broader evidence was not credible and declined to mitigate Davani's discharge because of the alleged discrimination and retaliation. To the contrary, the ALJ relied on the fact that Davani had "accumulated a sufficient number of active disciplinary actions to uphold removal," even after the ALJ elected to reduce Davani's third Group II Written Notice to a Group I Written Notice, which alone would not justify the discharge. Considering the entire record of Davani's claims of improper discrimination and retaliation as presented, the ALJ specifically determined that the evidence was not credible, making that determination because it was essential to his judgment that Davani's discharge should not be mitigated. We conclude,

6

therefore, that collateral estoppel now precludes Davani from maintaining his current action.

In addition, we are persuaded that the general bar of res judicata is applicable here. In April 2003, after receipt of his third Group II Written Notice and his subsequent discharge, Davani elected to file a grievance over his discharge through the State Department of Employee Dispute Resolution, as he was entitled to do, eventually requesting and receiving a formal hearing before an ALJ. Further, he chose to appeal the ALJ's adverse decision to the Fairfax County Circuit Court, as he again was entitled to do. Having made those choices, however, he committed himself to the results of those proceedings, including the fact that any subsequent attempt to relitigate his discharge would constitute claim-splitting under Virginia law.

Both in the state proceedings and in the present case, Davani alleged that he was wrongfully discharged as part of an ongoing campaign of harassment, discrimination and retaliation. The ALJ took testimony from the parties and reviewed the records submitted to him, concluding that Davani's discharge was proper and that there was no credible evidence of discrimination. Thus, to permit Davani now to maintain the present action would be to allow him to seek the same remedy on the same cause of action that the ALJ decided adversely to him and the Fairfax County Circuit Court reviewed and held was not contrary to law. Under Virginia law,

7

Davani may not "bring[] successive suits on the same cause of action where each suit addresses only a part of the claim." <u>Bill Greever Corp. v. Tazewell Nat'l Bank</u>, 540 S.E.2d 854, 856 (Va. 1998). Yet, that is precisely what Davani is attempting to do, by suggesting that he is splitting off from his claim in the present case all issues pertaining to the third Group II Written Notice and the ALJ's decision on it.

We reject Davani's argument that the scope of the state administrative proceedings before the ALJ was limited to the third Group II Written Notice. While we agree with Davani that the <u>basis</u> for the ALJ proceeding was his challenge to the third Group II Written Notice, it did not preclude the ALJ from considering the effect of the earlier Group II Written Notices. Indeed, such consideration was necessary to support relief entered by the ALJ. Moreover, much of the testimony presented during the hearing before the ALJ centered on events that took place six months or more prior to the issuance of the third Group II Written Notice. While it is true that the ALJ could not have directly modified or overturned the first and second Group II Written Notices, he was fully authorized to mitigate Davani's discharge based on the third Group II Written Notice if he had found credible Davani's claim that all discipline of Davani was based on improper discrimination or retaliation. As noted, however, the ALJ rejected that claim as unsupported by the evidence.

8

We also reject Davani's argument that the two earlier Group II Written Notices were not actually presented for review by the ALJ. While the ALJ clearly did not intend to open up and relitigate the propriety of the first two Group II Written Notices themselves, he did have to consider whether they were part of a scheme of discrimination to resolve Davani's defense to the third Group II Written Notice that the entirety of disciplinary action against him arose from illegal discrimination and retaliation. Critically for our purposes, it is this latter issue, and not the validity of the first two Group II Written Notices themselves, which Davani seeks to litigate again in the federal forum.

At bottom, Davani's central claim is that he was subjected to an ongoing course of illegal discrimination and retaliation that lasted for years and culminated in the termination of his employment. He maintained consistently that the first two Group II Written Notices were part of the alleged campaign of discrimination against him and that the third Group II Written Notice was just another part of that campaign.

After considering the long and tortured procedure Davani pursued before the EEOC, before the state agency and the state court, and now in federal court, we conclude that Davani chose in the first instance to submit his claims to the offices of the Commonwealth of Virginia, a choice he was legally free to make. Having done so, however, he is now bound by both the results and

9

its consequences.  See <u>Rao v. County of Fairfax, Va.</u>, 108 F.3d 42, 45 (4th Cir. 1997) (noting that while "an unreviewed state administrative determination . . . is not entitled to any preclusive effect," such determinations do have preclusive effect "if rendered or reviewed by a court").

The judgment of the district court is

<u>AFFIRMED</u>.

SHEDD, Circuit Judge, dissenting:

Davani has asserted a litany of employment discrimination and retaliation allegations that span several years, culminating in his termination from employment. The district court dismissed this case under Fed. R. Civ. P. 12(b)(6), holding that the doctrine of collateral estoppel bars all of Davani's claims, and the majority affirms this decision. I respectfully dissent.

"The doctrine of collateral estoppel precludes parties to a prior action from litigating in a subsequent action any factual issue that was actually litigated and essential to a valid, final judgment in the prior action." Scales v. Lewis, 541 S.E.2d 899, 901 (Va. 2001). In order for the doctrine to apply, the party asserting it bears the burden of proving by a preponderance of the evidence that the issue is precluded by a prior judgment. Id. Among other things, that party must establish that the issue sought to be litigated in the subsequent action (1) was actually litigated in the prior action and (2) was essential to the judgment in the prior action. Id. Moreover, collateral estoppel does not apply when the party against whom it is asserted did not have a "full and fair opportunity" in the prior action to litigate the issue sought to be precluded. Slagle v. Slagle, 398 S.E.2d 346, 349 (Va. App. 1990).

The prior action in this case is Davani's grievance proceeding relating to his third Group II notice. Davani's receipt of this

11

notice led to his termination.  The presiding administrative law judge ("ALJ") reduced the severity of this third Group II notice but nonetheless upheld Davani's termination because he had accumulated two prior Group II notices.

Although it is true that other issues related to Davani's employment came up during the grievance hearing, the critical fact of the matter is that the ALJ expressly confined the proceeding only to consideration of the merits of Davani's third Group II notice.  For example, during the grievance hearing the ALJ (referring to Davani's first two Group II notices) stated: "I don't want to litigate these two other incidences because I'm really not that concerned about it."  J.A. 170.  Later, the ALJ again made this point clear, stating in regard to the first Group II notice:

> But I will tell you that if it's completely . . . bogus, if it had been grieved and . . . it would have clearly, hundred percent been reversed, it doesn't matter at this point because it's not before me.  It's only before me in the sense that there's a . . . history.  And so I am bound by that group notice and . . . the fact that, assuming it's completely . . . frivolous for lack of a better term, I still treat it . . . as if it was completely valid.

J.A. 339.[1]

---

[1]As Davani's counsel explained during closing arguments: "We did not spend time going into the details of the first grievance or the second grievance, going into the details of these totally false and spurious workplace violence allegations.  Ah, we did not pull in witnesses for all of those issues.  There's an entirely other appropriate forum for doing so however."  J.A. 424.

In light of the ALJ's comments, and based on my review of the record of the administrative proceedings, I cannot agree with the majority's conclusion that all of Davani's discrimination and retaliation allegations and claims were actually litigated in the prior action or were essential to the prior judgment. Further, I do not believe that Davani had a "full and fair opportunity" to litigate all of those allegations and claims.[2] For these reasons, I would hold that collateral estoppel does not compel dismissal of this case. Because the district court did not rule on any of the alternate bases for dismissal raised by appellees, including res judicata, I would leave those issues for the district court to decide in the first instance on remand.

---

[2]Although the ALJ noted in his order that "[n]o credible evidence was presented suggesting the Agency disciplined [Davani] for any impermissible reason," J.A. 99, I find that conclusion to be immaterial for our purposes because, as set forth above, the ALJ limited the scope of the proceeding in such a manner that Davani could not have litigated all of his discrimination and retaliation allegations.