PRESENT: All the Justices

JAMES D'AMBROSIO

v. Record No. 170521

JANE WOLF, ET AL.

OPINION BY
JUSTICE WILLIAM C. MIMS
February 22, 2018

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
John M. Tran, Judge

In this appeal, we consider whether a challenge to the validity of a will is barred by claim preclusion, issue preclusion, or judicial estoppel.

I. Background and Procedural History

In June 2012, Nancy D'Ambrosio ("Nancy") suffered a stroke, resulting in the need for twenty-four-hour in-home care. In September 2013, following the death of her husband, she signed a durable general power of attorney naming her son, James D'Ambrosio ("D'Ambrosio"), as her attorney-in-fact. In February 2014, she executed a will, which divided her estate between D'Ambrosio and her two daughters, Jane Wolf and Electra D'Ambrosio ("appellees"). In May 2014, she signed a durable medical power of attorney appointing D'Ambrosio as her agent.

"[D]ue to a contentious and mistrusting relationship" between appellees and D'Ambrosio, appellees petitioned the circuit court to, among other things, appoint a guardian ad litem for Nancy, declare that Nancy was incapacitated, declare that Nancy's powers of attorney were void, appoint appellees as co-guardians for Nancy, and appoint an independent third party to serve as the conservator of Nancy's estate. In a counterclaim, D'Ambrosio sought a declaratory judgment that the powers of attorney were valid. He also cross-petitioned for the appointment of a conservator and guardian for Nancy.

Appellees ultimately filed a third amended petition seeking appointment of a guardian and conservator for Nancy. But rather than reasserting his counterclaims in response,

D'Ambrosio pled, as an affirmative defense, that the circuit court should deny appellees' petition under the doctrine of "[un]clean hands" because appellees "procured and participated in [the February 2014] will for [Nancy] without the knowledge of [D'Ambrosio]."  After extensive discovery, the circuit court entered a consent order finding that Nancy "is completely and permanently incapacitated" and appointing a neutral third-party to serve as her guardian and the conservator of her estate.  The order also voided Nancy's powers of attorney and dismissed D'Ambrosio's counterclaims with prejudice.

Nancy died in July 2015, and the February 2014 will was admitted to probate. D'Ambrosio filed a complaint seeking to impeach the will on the grounds of undue influence and lack of testamentary capacity.  Appellees filed a plea in bar, arguing that D'Ambrosio's claims were barred by the doctrine of claim preclusion "[b]ecause the claims asserted in the present action arise from the same conduct, transaction, or occurrence underlying the claims asserted" in the 2014 litigation, "namely [Nancy's] capacity to execute estate planning and life care documents between September 2013 and May 2014."  In response, D'Ambrosio argued that he could not have challenged the February 2014 will in the prior litigation because Nancy had not yet passed away and, therefore, claim preclusion did not apply.

The circuit court sustained the plea in bar on the grounds of claim preclusion, issue preclusion, and judicial estoppel.  First, it concluded that D'Ambrosio's claim was barred by claim preclusion because he could have, as Nancy's attorney-in-fact, challenged the will during Nancy's lifetime via a declaratory judgment action.  Next, the court concluded that issue preclusion barred D'Ambrosio's claim because the court in the prior litigation necessarily found that appellees exercised no undue influence.  Lastly, the court ruled that under the doctrine of judicial estoppel, it "should not have to consider arguments from [D'Ambrosio] regarding

[Nancy's] lack of testamentary capacity for the 2014 Will" when he "previously argued with vigor that [Nancy] was capable of making her own decisions and was able to muster the capacity to sign the 2014 Durable Power of Attorney." We granted D'Ambrosio this appeal.

## II. Analysis

On appeal, D'Ambrosio challenges each of the three grounds upon which the circuit court based its decision. We address them in turn.

## A. Claim Preclusion

Res judicata involves both claim and issue preclusion. *Funny Guy, LLC v. Lecego, LLC*, 293 Va. 135, 142, 795 S.E.2d 887, 890 (2017). Both of these preclusive effects, while distinguishable, require the party asserting res judicata as a defense to show by a preponderance of the evidence that the claim or issue should be precluded by a prior judgment. *Bates v. Devers*, 214 Va. 667, 671-72, 202 S.E.2d 917, 921 (1974) (citing *City of Portsmouth v. City of Chesapeake*, 205 Va. 259, 270, 136 S.E.2d 817, 826 (1964)).

In the Commonwealth, claim preclusion is encompassed by Rule 1:6, which states,

> [a] party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, shall be forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended, or the particular remedies sought.

Rule 1:6(a). Under this rule, "a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Lee v. Spoden*, 290 Va. 235, 245, 776 S.E.2d 798, 803 (2015) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). Thus, parties may not "relitigat[e] . . . the same cause of action, or any part thereof

3

which *could* have been litigated" in the previous action. *Bates*, 214 Va. at 670-71, 202 S.E.2d at 920-21; *Rhoten v. Commonwealth*, 286 Va. 262, 272, 750 S.E.2d 110, 115 (2013).

For this reason, we have repeatedly stated that "if the underlying dispute produces different legal claims that can be joined in a single suit . . . they should be joined unless a judicially-recognized exception to res judicata exists." *Funny Guy*, 293 Va. at 150, 795 S.E.2d at 895. However, when the underlying conduct, transaction, or occurrence produces multiple legal claims, not all of which can be asserted at the time of the initial litigation, claim preclusion will not prohibit the previously unmaintainable claims from being raised in subsequent litigation. *Id.* at 142, 795 S.E.2d at 890 ("Determining which claims *should* have been brought in earlier litigation largely depends on which claims *could* have been brought." (quoting Kent Sinclair, Guide to Virginia Law & Equity Reform and Other Landmark Changes §11.2, at 247 (2006) (emphases in original)). For example, claim preclusion will "not bar a claim that does not *accrue* prior to the litigation triggering the bar." *Funny Guy*, 293 Va. 135, 159, 795 S.E.2d 887, 900 (2017) (emphasis added); *see also Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 328 (1955) ("While the 1943 judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist.").

In the present case, D'Ambrosio argues that he could not have maintained the present challenge to Nancy's will during the 2014 litigation because she was still alive. He notes that we have long held that the "essential characteristic of a will is that it operates only upon and by reason of the death of the maker." *Spinks v. Rice*, 187 Va. 730, 740, 47 S.E.2d 424, 428 (1948) (citation omitted). Until that point, it is "ambulatory and revocable." *Id.* at 740, 47 S.E.2d at 428 (citation omitted). The testator "has parted with no rights nor divested [herself] of any interest in or control over [her] property." *Id.* at 740, 47 S.E.2d at 428-29. Thus, "[w]hile [the

4

testator] lives, no beneficiary has anything more than a bare expectancy and no person has suffered any injury or damage as a result of [her] tentative dispositions." *Thorsen v. Richmond SPCA*, 292 Va. 257, 278, 786 S.E.2d 453, 465 (2016) (quoting *Van Dam v. Gay*, 280 Va. 457, 462, 699 S.E.2d 480, 482 (2010)). "Because of this mutability and bare expectancy," no cause of action based upon a will "accrues" to a testamentary beneficiary "prior to the death of the testator." *Id.*

Since Nancy was alive during the 2014 litigation, D'Ambrosio's interest in the tentative dispositions of her will was nothing more than a bare expectancy, and he had suffered no injury. Thus, the present cause of action had not accrued, and claim preclusion cannot bar it from being raised here. Nevertheless, appellees argue that as Nancy's attorney-in-fact, D'Ambrosio could have challenged the validity of the will via a declaratory judgment action in the 2014 litigation.

Declaratory judgment actions are designed "not to give parties greater rights than those which they previously possessed, but to permit the declaration of those rights before they mature." Kent Sinclair, Virginia Remedies §§4-1[A], 4-3, at 4-2 to 4-4, 4-13- to 4-16 (5th ed. 2016). Thus, by definition, they can allow for actions on claims before they accrue. *See* Code § 8.01-191 (declaratory judgment statutes "afford relief from the uncertainty and insecurity attendant upon controversies over legal rights, without requiring one of the parties interested so to invade the rights asserted by the other as to entitle him to maintain an ordinary action therefor").

However, to resolve the case before us, we need not decide whether D'Ambrosio could have maintained a declaratory judgment action to challenge Nancy's will during her lifetime.[1]

---

[1] There is authority that both supports and opposes appellees' contention that D'Ambrosio could have, as Nancy's attorney-in-fact, challenged Nancy's will via a declaratory judgment during her lifetime. *See* 3 William J. Bowe & Douglas H. Parker, Revised Treatise: Page on the Law of Wills § 26.25, at 79-80 (2004) (noting that "a will has been canceled

Even if he could have done so, the claim was still unaccrued at that time, and claim preclusion cannot bar a claim that did not accrue prior to the litigation triggering the bar. This rule does not change even if a declaratory judgment action could have been brought. *See Winborne v. Doyle*, 190 Va. 867, 871-73, 59 S.E.2d 90, 92-94 (1950) (permitting separate action for damages after a declaratory judgment because the plaintiff did not request such damages in the declaratory judgment action and holding that "the failure to seek such relief [in the declaratory judgment action] does not constitute a bar to other proceedings to enforce the rights determined by the judgment"); Restatement (Second) of Judgments § 33 cmt. c (1982) (When a party seeks declaratory relief, "the weight of authority does not view him as seeking to enforce a claim. . . . Instead, he is seen as merely requesting a judicial declaration as the existence and nature of a relation between himself and the defendant."). Accordingly, we conclude that claim preclusion does not bar D'Ambrosio's challenge to Nancy's will.

B. Issue Preclusion

D'Ambrosio next challenges the circuit court's application of issue preclusion, or collateral estoppel, to dismiss his claim. Unlike claim preclusion, which bars relitigation of a cause of action, "[i]ssue preclusion bars relitigation of common *factual issues* between the same or related parties." *Funny Guy*, 293 Va. at 142, 795 S.E.2d at 890 (emphasis added). However, the factual issue must have been "actually litigated and essential to a valid and final personal judgment in the first action." *Rawlings v. Lopez*, 267 Va. 4, 4-5, 591 S.E.2d 691, 692 (2004) (citation omitted). Our "inquiry must always be as to the point or question actually litigated and

---

[through a declaratory judgment action] during the life of the testator, at the suit of his guardian" (citing *Saliba v. James*, 196 So. 832, 832-33, 837 (Fla. 1940))); *but see Pond v. Faust*, 155 P. 776, 778 (Wash. 1916) ("[C]ourts have no power to inquire into the validity of wills prior to the death of the maker. . . . Furthermore, the guardian has, or should have, no interest whatever either in establishing or disestablishing a will of his ward.").

determined in the original action; not what *might* have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action." *Eason v. Eason*, 204 Va. 347, 351, 131 S.E.2d 280, 282 (1963) (quoting *Kemp v. Miller*, 166 Va. 661, 675, 186 S.E. 99, 104 (1936)).

Accordingly, we start our analysis by examining the actual findings of the "consent order" which ended the 2014 litigation. This order, which was entered upon an agreement by the parties, found that Nancy was incapacitated, appointed a neutral third-party as guardian and conservator, and voided the powers of attorney. The order also outlined certain factual findings, including that Nancy was "completely and permanently incapacitated." However, the order did not mention her will or address her mental capacity at the specific time she executed it. Nor did it mention the circumstances surrounding the execution of the will, including whether appellees influenced Nancy, unduly or otherwise.

It is well-established that the "time at which a will is executed is the vital time for mental capacity to exist." *Forehand v. Sawyer*, 147 Va. 105, 121, 136 S.E. 683, 688 (1927); *Gilmer v. Brown*, 186 Va. 630, 637, 44 S.E.2d 16, 19 (1947) ("[M]ental capacity must be ascertained *as of the date the instrument attacked was executed*." (emphasis added)). Assuming that findings in a consent order are actually litigated and decided for the purposes of issue preclusion,[2] the consent order, at most, can be interpreted to have found that Nancy lacked the requisite capacity to execute her powers of attorney in September 2013 and May 2014. But she executed her will in

---

[2] While consent judgments can provide a basis for application of claim preclusion, we have yet to address whether issue preclusion can be based on such a judgment. *See Virginia Concrete Co. v. Board of Supervisors*, 197 Va. 821, 825, 91 S.E.2d 415, 418 (1956); Sheldon R. Shapiro, Annotation, *Modern Views of State Courts as to Whether Consent Judgment is Entitled to Res Judicata or Collateral Estoppel Effect*, 91 A.L.R.3d 1170 (1979). As this issue was not raised or briefed by the parties, we assume, without deciding, that the consent order in this case may provide a basis for application of issue preclusion.

7

February 2014.  If a testator had mental capacity at the time she executed her will "it is immaterial what [her] mental condition was before or after that time." *Forehand*, 147 Va. at 121, 136 S.E. at 688.  Moreover, it cannot be inferred from anything in the consent order that the court even considered whether appellees procured the will by undue influence, let alone that it actually litigated and resolved this question in favor of appellees.

"Estoppel, because it concludes a party from alleging the truth, must be certain to every intent and its scope should not be extended by argument or inference." *Gilmer*, 186 Va. at 636, 44 S.E.2d at 19.  While the circumstances surrounding the 2014 litigation might have cast doubt on Nancy's testamentary capacity, and the existence of any undue influence by appellees might have been considered by the court, it is not certain that these issues were actually litigated and decided by the court.  Accordingly, issue preclusion does not bar D'Ambrosio's claim.

### C. Judicial Estoppel

Lastly, D'Ambrosio challenges the circuit court's conclusion that his complaint is barred by judicial estoppel.  Judicial estoppel is an equitable doctrine designed to prevent litigants from "'playing fast and loose' with the courts . . . or 'blowing hot and cold' depending on perceived self-interest." *Wooten v. Bank of Am., N.A.*, 290 Va. 306, 310, 777 S.E.2d 848, 850 (2015) (internal citation omitted) (quoting *United Va. Bank v. B.F. Saul Real Estate Inv. Tr.*, 641 F.2d 185, 190 (4th Cir. 1981)).  The "fundamental" requirement for its application is that "'the party sought to be estopped must be seeking to adopt a position [of fact] that is inconsistent with a stance taken in a prior litigation.'" *Bentley Funding Group, L.L.C. v. SK&R Group, L.L.C.*, 269 Va. 315, 326, 608 S.E.2d 49, 54 (2005) (quoting *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996)).  Additionally, if the inconsistent positions involve different proceedings, the parties to the proceedings must be the same, and the inconsistent position must have been relied upon by

8

the court or prior court in rendering its decision. *Virginia Electric & Power Co. v. Norfolk S. Ry.*, 278 Va. 444, 462, 638 S.E.2d 517, 527 (2009) (citations omitted).

However, courts should "proceed with the invocation of judicial estoppel cautiously, since it effectively precludes a party from asserting a position that would normally be available and could create harsh results." Kent Sinclair & Leigh B. Middleditch, Jr., Virginia Civil Procedure § 14.12, at 1239 (6th ed. 2014). The circuit court applied judicial estoppel in the present case after concluding that because D'Ambrosio argued in the 2014 litigation that Nancy was capable of executing the powers of attorney, he could not now argue that she lacked the requisite testamentary capacity to execute her will. But as the circuit court elsewhere stated, these positions are not "fatally inconsistent."

As noted above, "[t]he time at which a will is executed is the vital time for mental capacity to exist. If it appears that the testator had mental capacity at that time, it is immaterial what his mental condition was before or after that time." *Forehand*, 147 Va. at 121, 136 S.E. at 688. Thus, D'Ambrosio's factual assertions that decedent lacked sufficient capacity to execute a will at a specific point time are not necessarily inconsistent with his assertions that she possessed sufficient capacity, possibly more, several months before or after that time. Thus, judicial estoppel does not apply.

But even if D'Ambrosio's positions were factually inconsistent, the doctrine of judicial estoppel is still inapplicable because the court did not rely upon D'Ambrosio's assertions in rendering its decision. *Virginia Electric & Power*, 278 Va. at 463, 683 S.E.2d at 528 (observing that for judicial estoppel to apply, the court must have "*relied upon* the prior inconsistent position in rendering [its] prior judgment or ruling") (emphasis in original). In the 2014 litigation, D'Ambrosio maintained that Nancy was "capable of managing her affairs" and

9

competent when she executed the powers of attorney. However, the court necessarily rejected these assertions when it found that Nancy was incapacitated and invalidated her powers of attorney. As the prior court did not rely upon D'Ambrosio's factual assertions in rendering its decision, judicial estoppel does not apply. *See Bentley Funding Group*, 269 Va. at 327, 609 S.E.2d at 54-55 ("The insistence upon a court having accepted the party's prior inconsistent position ensures that judicial estoppel is applied in the narrowest of circumstances [where] the necessity of protecting juridical integrity outweighs the ramifications of that protection upon the litigant.").

## III. Conclusion

Concluding that claim preclusion, issue preclusion, and judicial estoppel do not bar D'Ambrosio's complaint to impeach Nancy's will, we reverse the judgment of the circuit court and remand for further proceedings.

*Reversed and remanded.*