**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-1789**

ANTONIO PASSARO, JR.,

Plaintiff – Appellant,

v.

COMMONWEALTH OF VIRGINIA; VIRGINIA DEPARTMENT OF STATE POLICE,

Defendants – Appellees,

Appeal from the United States District Court for the Eastern District of Virginia at Norfolk.  Douglas E. Miller, Magistrate Judge.  (2:17-cv-00048-DEM)

Argued:  April 3, 2019                                     Decided:  August 16, 2019

Before RICHARDSON, Circuit Judge, TRAXLER, Senior Circuit Judge, and Joseph F. ANDERSON, Jr., Senior United States District Judge for the District of South Carolina, sitting by designation.

Affirmed in part, reversed in part, and remanded by published opinion.  Judge Richardson wrote the opinion, in which Judge Anderson joined.  Judge Traxler wrote an opinion concurring in part and dissenting in part.

**ARGUED:** Kevin Edward Martingayle, BISCHOFF MARTINGAYLE, P.C., Virginia Beach, Virginia, for Appellant.  Toby Jay Heytens, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.  **ON BRIEF:** Mark Herring, Attorney General, Samuel T. Towell, Deputy Attorney General, Sydney E. Rab,

Senior Assistant Attorney General, Sarah F. Robb, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.

RICHARDSON, Circuit Judge:

Antonio Passaro Jr. is a former Special Agent with the Virginia State Police. He claims that he faced unlawful discrimination based on his mental disability (post-traumatic stress disorder) and national origin (Italian-American). He also claims that he was unlawfully fired in retaliation for filing a complaint with the Equal Employment Opportunity Commission ("EEOC"). This conduct, he claims, violated the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* He has sued the Commonwealth of Virginia and the Virginia Department of State Police (together, "the Commonwealth"), seeking relief that includes compensatory damages, reinstatement, and back pay.

The district court dismissed Passaro's ADA claim, concluding that it was barred by state sovereign immunity. The court then granted summary judgment for the Commonwealth on the Title VII claims, concluding they were barred by the claim-preclusive effect of a state-court judgment upholding the outcome of an administrative grievance Passaro had filed. We affirm the district court's dismissal of the ADA claim because the Commonwealth has not waived its sovereign immunity from that claim. But we reverse the district court's decision that claim preclusion bars Passaro's Title VII claims.

I.

Passaro worked as a Trooper with the Department of State Police until his promotion to Special Agent. In 2008, he transferred to the department's High Tech

3

Crimes Unit, where he investigated child-pornography cases. Starting in 2010, he began receiving disciplinary notices for infractions arising from his alleged failure to follow proper procedures and to manage his caseload. The episode that ultimately led to Passaro's termination was an investigation he conducted in April and May 2012, which the department claims he bungled.

In July 2012, a doctor diagnosed Passaro with post-traumatic stress disorder arising from his frequent exposure to images of child pornography at work. Passaro sought a transfer from High Tech Crimes, which he claims was not granted.

On February 6, 2013, Passaro learned that he was being recommended for demotion from Special Agent back down to Trooper. Two days later, Passaro filed a complaint with the EEOC, asserting that the department had failed to make reasonable accommodations for his post-traumatic stress disorder and had harassed and discriminated against him based on his disability and national origin.

In March 2013, Passaro was fired. He then filed a grievance with Virginia's Office of Employment Dispute Resolution under Virginia Code § 2.2-3003. He claimed that his discipline and termination were unjustified, and also that he had been the victim of discrimination and harassment. The grievance was assigned to a hearing officer, who promptly held a hearing and issued a decision that largely focused on whether Passaro's discipline comported with internal department policies. Despite overturning some of the disciplinary action against Passaro, the hearing officer upheld Passaro's termination.

Passaro sought review of the hearing officer's ruling. He filed administrative appeals, which were denied. Passaro also appealed to a Virginia state court for review of

4

whether the grievance decision was "contradictory to law" under Virginia Code § 2.2-3006(B). The court largely rejected Passaro's arguments but concluded the hearing officer had overlooked certain testimony. On remand, the hearing officer affirmed his earlier decision, and Passaro again filed administrative appeals that were denied. Passaro returned to state court, which this time affirmed. Passaro then appealed to Virginia's intermediate appellate court, which affirmed. *Passaro v. Virginia Dep't of State Police*, 796 S.E.2d 439 (Va. Ct. App. 2017). His state-court appeals finally concluded in May 2018, when the Virginia Supreme Court declined Passaro's request for rehearing.

In November 2016, while those appeals were ongoing, Passaro brought the instant action in Virginia state court against the Commonwealth. His complaint asserted "unlawful discrimination, harassment and retaliation," as well as improper denials of his "requests for reasonable accommodations." J.A. 13. The Commonwealth timely removed the case to federal district court, asserting federal question jurisdiction based on the Title VII claims.

The Commonwealth then moved to dismiss, and the district court granted the motion in part. It dismissed Passaro's ADA claim, which it concluded was barred by state sovereign immunity.[1] It also dismissed Passaro's Title VII claim for national-origin discrimination but gave him leave to replead. Passaro filed an amended complaint, which the Commonwealth answered, asserting numerous defenses including *res judicata*. The

---

[1] The district court also dismissed any disability-related claim under the Virginia Human Rights Act, Va. Code § 2.2-3900 *et seq.* Passaro has not challenged that dismissal on appeal.

parties then consented to have the matter proceed before a magistrate judge for all purposes.

Before the magistrate judge, the Commonwealth sought to stay this action pending final resolution of Passaro's state-court appeals, arguing that the state-court judgment could have preclusive effect on this case. Passaro responded that, while he disagreed that the state-court action would have any preclusive effect, he did not object to a stay. The court granted the stay, which remained in place until May 2018.

After the stay was lifted, the Commonwealth moved for summary judgment, arguing that the state-court proceedings had claim-preclusive effect on Passaro's discrimination and retaliation claims under Title VII. The district court agreed and entered judgment for the Commonwealth.

Passaro timely appeals. He argues that the district court erred in dismissing his ADA claim because the Commonwealth has waived its state sovereign immunity. He also argues that claim preclusion does not bar his Title VII claims, asserting that the Commonwealth also waived this defense and, alternatively, that claim preclusion does not apply.

II.

Title I of the ADA protects workers with disabilities from discrimination and requires employers to make reasonable accommodations for them. On its face, the statute applies to state governments and authorizes a private cause of action by state employees. *See* 42 U.S.C. § 12202. But state sovereign immunity bars all claims by private citizens against state governments and their agencies, except where Congress has validly

6

abrogated that immunity or the state has waived it. *See Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253–54 (2011); *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). Although Congress purported to abrogate state sovereign immunity from lawsuits under Title I of the ADA, the Supreme Court has held that Congress exceeded its authority in doing so. *Board of Trustees v. Garrett*, 531 U.S. 356 (2001). Therefore, to proceed on his Title I claim, Passaro must show waiver.

Passaro presents two arguments for waiver. The first is that the Commonwealth waived its sovereign immunity by removing this case from state court to federal court. Our precedent forecloses this argument unless Passaro can also show that the Commonwealth has waived its immunity from the Title I claim in state court. In *Stewart v. North Carolina*, 393 F.3d 484 (4th Cir. 2005), we held that where a state retains its sovereign immunity from suit in state court, it does not lose that immunity by removing the case to federal court. *Id.* at 490. As Passaro points out, the other courts of appeals have split on whether to adopt *Stewart*'s holding: some have followed *Stewart*, others have rejected it, and still others have adopted a supposed "middle ground" (although this middle ground is hard to distinguish, in its practical effect, from our approach in *Stewart*). *See generally Stroud v. McIntosh*, 722 F.3d 1294, 1300–01 (11th Cir. 2013)

7

(discussing split).  Nothing in these out-of-circuit cases makes us inclined to revisit *Stewart*; in any event, we are powerless to overturn *Stewart*.[2]

We therefore turn to Passaro's second argument:  that the Commonwealth has made statements waiving its sovereign immunity from Title I actions.  Under both federal and Virginia law, a clear statement is required to waive state sovereign immunity.  *See Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999) ("clear declaration"); *Ligon v. Cty. of Goochland*, 689 S.E.2d 666, 670 (Va. 2010) ("explicit and express waiver").

Passaro mainly rests this argument on various statements the Commonwealth has made to the effect that it intends to abide by its obligations under Title I of the ADA and that its employees may raise violations with the EEOC.  For example, an employee handbook states that Virginia is "committed to providing equal employment opportunity" regardless of "disability" and "complies with federal and state equal employment opportunity laws."  DEP'T OF HUMAN RES. MGMT., EMPLOYEE HANDBOOK 24 (2017), *available at* https://www.dhrm.virginia.gov/docs/default-source/hr/manuals/employeehandbook.pdf.  And a poster that Virginia puts up in its workplaces explains to employees that "if you feel you have been discriminated against," the EEOC is one of "the resources available to assist you."  DEP'T OF HUMAN RES. MGMT., EEO POSTER

---

[2] Passaro argues that *Stewart* conflicts with a more recent Fourth Circuit decision, which noted "a bright-line rule" that "any voluntary removal waives immunity." *Sansotta v. Town of Nags Head*, 724 F.3d 533, 546 (4th Cir. 2013).  But this language was dictum that did not address *Stewart*'s specific holding one way or the other.  And even if it does conflict with *Stewart*, we remain bound by the earlier case.

(2017), *available at* https://www.dhrm.virginia.gov/docs/default-source/eeo-documents/eeoposter.pdf.

These statements do not show waiver. State sovereign immunity is an immunity from private suit; it does not relieve a state of its obligations and does not bar federal enforcement actions. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 71 n.14 (1996). And while exhaustion of EEOC procedures is a prerequisite to bringing a private suit, those procedures also provide a mechanism by which the federal government investigates claims it may bring itself. *See* 42 U.S.C. §§ 2000e-5, 12117(a); *cf. EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 179–80 (4th Cir. 2011) (explaining that EEOC investigations under the Age Discrimination in Employment Act can lead to federal enforcement actions against state governments). Thus, as the Commonwealth agreed at oral argument, it remains covered by Title I of the ADA and is not immune from EEOC investigations of Title I violations. The statements that Passaro identifies merely acknowledge that fact and have nothing to do with the Commonwealth's immunity from private lawsuits.

Equally unavailing is Passaro's reliance on Virginia Code § 2.2-3903(D), which provides that "[c]auses of action based upon the public policies reflected in [the Virginia Human Rights Act] shall be exclusively limited to those actions, procedures, and remedies, if any, afforded by applicable federal or state civil rights statutes or local ordinances." Read in context, this language merely confirms that a different statute—Virginia's Human Rights Act—does not create an implied private right of action. *See*

9

Va. Code § 2.2-3903(A). It comes nowhere close to a clear waiver of sovereign immunity from claims under Title I of the ADA.

We thus conclude that the Commonwealth has not waived its sovereign immunity from private lawsuits under Title I of the ADA in either state or federal court. And that also means, under *Stewart*, that the Commonwealth did not waive its sovereign immunity by removing its claims to federal court.

Finally, Passaro suggested at oral argument that the Commonwealth's decision to remove, when combined with the statements he has identified, somehow amounts to a waiver. In effect, he argues, we can find a waiver of sovereign immunity based on less-than-clear statements when a case is removed to federal court. This argument is inconsistent with *Stewart*, which held that removal waives a state's immunity defense only when the state has also waived its immunity in its own courts. In deciding the latter issue, we must of course follow Virginia law, which requires an "explicit and express waiver" with no exception for removal cases (hardly surprising, for such an exception would not make much sense). *Ligon*, 689 S.E.2d at 670. This argument is also inconsistent with Supreme Court case law, which consistently requires waiver to be unequivocal. Therefore, the district court correctly dismissed Passaro's ADA claim, and we affirm that part of its judgment.

10

III.

We reverse, however, the district court's ruling at summary judgment that claim preclusion bars Passaro's Title VII claims.[3] State law governs whether a prior state-court judgment has issue- or claim-preclusive effect on a Title VII action. *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466–78 (1982). Under Virginia law, it "is firmly established that the party who asserts the defenses of res judicata or collateral estoppel has the burden of proving by a preponderance of the evidence that the claim or issue is precluded by a prior judgment." *Scales v. Lewis*, 541 S.E.2d 899, 901 (Va. 2001). Here, the Commonwealth asserts that Passaro could have litigated his claims of discrimination and retaliation through the state grievance process, meaning that the state-court judgment (which affirmed the decision on Passaro's grievance) has claim-preclusive effect barring his Title VII claims in full. We disagree.

Under Virginia's law of claim preclusion, parties "may not relitigate 'the same cause of action or any part thereof which *could* have been litigated in the previous action.'" *Bennett v. Garner*, 913 F.3d 436, 440 (4th Cir. 2019) (quoting *D'Ambrosio v. Wolf*, 809 S.E.2d 625, 628 (Va. 2018)). "While ostensibly a broad proposition, [claim preclusion] nonetheless is limited by longstanding principles." *Id.* In this case, the Commonwealth's claim-preclusion defense runs afoul of one such principle: if procedural rules prevented the plaintiff from asserting all his claims for relief in a single

---

[3] The Commonwealth has not asserted sovereign immunity from these claims.

11

case, then claim preclusion does not bar the plaintiff from bringing a second case to seek the relief he could not obtain in the first.

The breadth of claim preclusion has long turned on the plaintiff's ability to seek comprehensive relief in a single action. We see this most clearly in the historical division between law and equity, which often afforded different remedies on the same facts:

> So long as law and equity were administered by separate courts, or by different "sides" of the same court, a first proceeding at law or in equity often could be followed by a second proceeding in equity or at law. A party who lost an action at law on a contract, for instance, might undo the law judgment by securing reformation in a subsequent suit in equity. A court of law, on the other hand, might cheerfully grant a damages remedy after denial of an equitable remedy on discretionary grounds. Much similar duplication of litigation occurred.

18 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 4410 (3d ed. 2008) (footnotes omitted). Even where an equity court could award incidental legal relief, such as damages, claim preclusion often did not bar a later action at law because it was thought unfair to force a litigant to seek damages in equity where he had no right to a jury trial. *Funny Guy, LLC v. Lecego, LLC*, 795 S.E.2d 887, 891 (Va. 2017). Thus, a suit in equity generally lacked preclusive effect on a later action at law "unless the very matter in controversy in the pending action was decided in the prior suit." *Wright v. Castles*, 349 S.E.2d 125, 128 (Va. 1986).

These limitations on claim preclusion became outmoded as joinder rules became less restrictive. Today, plaintiffs can usually seek all available relief in a single suit. Reflecting this fact, the modern trend—and the one adopted by the Second Restatement

12

of Judgments—is to expand claim preclusion to cover all claims arising from the same "transaction" underlying the prior action. *See generally Keith v. Aldridge*, 900 F.2d 736, 739–40 (4th Cir. 1990) (discussing transactional approach). The Virginia Supreme Court adopted a similar transactional approach in 2006 when it promulgated Rule 1:6, which provides that all claims relating to the "same conduct, transaction or occurrence" fall within the scope of claim preclusion. Va. Sup. Ct. R. 1:6(a). That holds true "whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended, or the particular remedies sought." *Id.* The rule provides only one narrow exception relating to certain mechanic's lien remedies. *See* Va. Sup. Ct. R. 1:6(c).

Despite Rule 1:6's sweeping and mostly unqualified language, where joinder remains limited, so does the scope of claim preclusion. Even under Rule 1:6, claim preclusion remains "the stepchild of pleading and joinder rules" and "largely depends on which claims *could* have been brought" in the earlier action. *Funny Guy*, 795 S.E.2d at 890 (cleaned up). Indeed, Virginia's Supreme Court—whose guidance we must faithfully apply in interpreting the rule—has held that "[a]ll of the ordinary caveats to res judicata apply to Rule 1:6's transactional approach." *Id.* at 895 n.15.

One well-recognized caveat is that the transactional approach assumes "no formal barriers in the way of a litigant's presenting to a court in one action the entire claim including any theories of recovery *or demands for relief* that might have been available to him under applicable law." Restatement (Second) of Judgments § 26(1)(c) cmt. c (Am.

13

Law Inst. 1982) (emphasis added). "When such formal barriers in fact existed and were operative against a plaintiff in the first action, it is unfair to preclude him from a second action in which he can present those phases of the claim which he was disabled from presenting in the first." *Id.*; *see also* Restatement of Judgments § 62(a) & cmt. k (Am. Law Inst. 1942) (explaining that a plaintiff could split his cause of action where doing so "was essential to preserving his rights").

Here, Passaro could not have presented his entire case in one action. Virginia's grievance procedures offer substantive claims that employees cannot pursue in a typical civil action. In particular, the grievance process appears to be the *only* mechanism by which a Virginia state employee can have disciplinary action overturned for violating internal policies of the state agency that employed him. *See Virginia Dep't of Transp. v. Stevens*, 674 S.E.2d 563, 566–57 (Va. Ct. App. 2009). And a Title VII action offers compensatory damages that are unavailable through the grievance process. Virginia's administrative grievance procedures forbid damages awards, instead permitting limited monetary remedies such as back pay and, in some cases, attorney's fees. *See* OFFICE OF EQUAL EMP'T & DISPUTE RESOLUTION, GRIEVANCE PROCEDURE MANUAL § 5.9, at 19 (2017), *available at* http://www.dhrm.virginia.gov/docs/default-source /edrdocuments/GPM-2017.pdf; *Martin-Bangura v. Virginia Dep't of Mental Health*, 640 F. Supp. 2d 729, 733 (E.D. Va. 2009). Title VII affords compensatory damages for intentional discrimination that represent a distinct form of relief from back pay, *see* 42 U.S.C. § 1981a(b)(2), and encompass distinct harms such as emotional distress, *see Depaoli v. Vacation Sales Assocs., L.L.C.*, 489 F.3d 615, 620 (4th Cir. 2007). Thus,

14

neither the grievance process nor a Title VII lawsuit offered a single proceeding where Passaro could litigate all his claims for relief.

Nor can we conclude, at least based on the record before us, that Passaro could have asserted a Title VII claim for money damages as part of the subsequent state-court action appealing the grievance decision. The statutory procedures governing grievance appeals suggest that they cannot feasibly be joined to a Title VII action seeking damages. There is no jury, and the deadlines are too rapid to accommodate a typical civil action: the state court must hold a hearing within 30 days of receiving the grievance record and must then decide the case within 15 days of the hearing. Va. Code § 2.2-3006(B). And the Commonwealth conceded at oral argument that there is no basis to believe that, when an employee appeals an administrative grievance decision to state court, he can join a claim for damages to the agency-review action.

Because Passaro could not have sought money damages in the prior suit, claim preclusion does not bar him from seeking money damages in this federal action. And he has done just that: his prayer for relief includes a request for compensatory damages up to the statutory maximum. J.A. 125; *see* 42 U.S.C. § 1981a(b)(3) (statutory cap). Thus, the Commonwealth did not meet its burden to establish that claim preclusion barred Passaro's claim in full, and we must reverse the district court's grant of summary judgment to the Commonwealth.

The Second Circuit, applying New York law in *Davidson v. Capuano*, 792 F.2d 275 (2d Cir. 1986), reached a similar result. There, a state prisoner had successfully challenged an instance of prison discipline through a state-court proceeding brought

15

under Article 78 of New York's Civil Practice Law and Rules. *Id.* at 277. The state raised the defense of claim preclusion in a parallel federal lawsuit under 42 U.S.C. § 1983 that arose from the same facts. The Second Circuit observed that "damages for civil rights violations" were available in the § 1983 action but not the Article 78 proceeding. 792 F.2d at 278. Thus, claim preclusion did not bar the § 1983 action for the same reason it does not bar Passaro's Title VII claim: "the initial forum did not have the power to award the full measure of relief sought in the later litigation." *Id.*

The Commonwealth, like the district court, relies on language in Rule 1:6 stating that claim preclusion applies "regardless of . . . the particular remedies sought" in the prior proceeding. Va. R. Sup. Ct. 1:6(a). This argument misapprehends the meaning of the quoted text. Rule 1:6 provides that a litigant cannot limit the scope of claim preclusion by choosing to seek only particular remedies in the first action. Yet there is a critical distinction between the remedies *sought* and the remedies *available*. A litigant has no right to split his claim by voluntarily choosing to seek only some of the remedies available to him, but that is not really a choice when it is thrust upon him by procedural rules. Thus, under traditional claim-preclusion principles, a litigant who had to split his claim to preserve his rights may return to court to seek remedies that were unavailable to him in the first proceeding. Virginia's Supreme Court has made clear that Rule 1:6

preserves this and other well-recognized limitations on the scope of claim preclusion. *Funny Guy*, 795 S.E.2d at 895 n.15.[4]

Ultimately, this result is consistent with basic fairness. If claim preclusion applied in full, then a litigant in Passaro's shoes would face a difficult choice. He would either have to assert all his claims through the grievance proceeding, forgoing his ability to obtain compensatory damages (as well as his right to a jury trial), or rely solely on a traditional civil action, giving up his right to appeal the police department's grievance decision. The common law does not sanction this result, which lets procedural rules deprive a litigant of his substantive rights. Virginia law, we conclude, follows the common law in this regard.

That does not necessarily mean giving litigants like Passaro a second bite at the apple. If Passaro raised issues about discrimination and retaliation during the grievance process, and those issues were actually decided, then issue preclusion may bar relitigating them. *See generally D'Ambrosio*, 809 S.E.2d at 629–30 (discussing issue preclusion under Virginia law). We do not decide the availability or scope of issue preclusion,

---

[4] The Commonwealth cites district court decisions that, relying in part on the "remedies sought" language, applied claim-preclusion in cases very similar to this one. *See Johnson v. Virginia*, No. 4:11-cv-26, 2011 U.S. Dist. LEXIS 164521, at *8–9 (E.D. Va. June 16, 2011); *Holmes v. Virginia Cmty. Coll. Sys.*, No. 1:09-cv-59, 2010 WL 420048, at *5–6 (W.D. Va. Feb. 1, 2010); *Martin-Bangura*, 640 F. Supp. 2d at 737–41. While we can see how the text of Rule 1:6 led district courts to this conclusion, Virginia's Supreme Court has since clarified that traditional limitations on claim preclusion continue to apply under Rule 1:6. We therefore find these decisions unpersuasive. The Commonwealth also cites our unpublished decision in *Davani v. Clement*, 263 F. App'x 296 (4th Cir. 2009), which is inapposite: it was decided based on issue preclusion, not claim preclusion.

which is not before us. Moreover, claim preclusion could still conceivably bar Passaro's Title VII action to the extent he seeks remedies (such as reinstatement and back pay) that were available through the grievance process. Because the Commonwealth has not advanced that more limited claim-preclusion argument, we do not address it. We hold merely that claim preclusion does not bar Passaro's Title VII claims *in full*—that is, even for compensatory damages unavailable in the prior suit—which means that the district court erred in dismissing them on that ground.[5]

Finally, with great respect for our dissenting colleague, we decline to certify this issue to the Virginia Supreme Court. Neither party has requested certification. To the contrary: the Commonwealth removed this case from Virginia state court, choosing to put the issue before the federal courts. *Cf. Nat'l Bank of Washington v. Pearson*, 863 F.2d 322, 327 (4th Cir. 1988) ("If Pearson had wanted the Maryland Court of Appeals to rule on the matter, he should not have removed the action to federal court."). Moreover, we generally certify questions only when "available state law is clearly insufficient." *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994). While no Virginia cases directly address the issue before us today, they do provide significant guidance, instructing us to follow the ordinary caveats to claim preclusion in applying Rule 1:6's transactional approach. The Restatements and other persuasive authority clearly support our conclusion that one of

---

[5] We also do not address, because it is unnecessary for our decision, Passaro's argument that the state waived the rule against claim-splitting and thus its claim-preclusion defense. *See generally Bill Greever Corp. v. Tazewell Nat'l Bank*, 504 S.E.2d 854, 856 (Va. 1998) (discussing waiver doctrine).

18

those caveats applies here, and the Commonwealth has not cited any contrary authority from other jurisdictions. *Cf. Powell v. U.S. Fid. & Guar. Co.*, 88 F.3d 271, 273 (4th Cir. 1996) (declining certification given "clear state of the law in every other jurisdiction that has addressed the issue"). Faced with these considerations, we decline to grant *sua sponte* certification of the claim-preclusion issue before us. Of course, should Virginia's Supreme Court address that issue in a future case, its decision will be determinative.

IV.

For these reasons, we affirm the district court's dismissal of Passaro's ADA claim, reverse the grant of summary judgment dismissing Passaro's Title VII claims, and remand for further proceedings consistent with this opinion.

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED*

TRAXLER, Senior Circuit Judge, concurring in part and dissenting in part:

I concur in Sections I and II of the majority opinion. As to how Virginia courts would resolve the claim preclusion issue in Section III, I would certify this question to the Supreme Court of Virginia. This is not a criticism of the majority opinion. The legal route it outlines is novel, even if correct. In my view, the impact of this case will be far reaching, as there is a great deal of litigation in this area of the law. There is no Virginia case law that directly addresses the precise issue before us, and I am not entirely certain that we have reached the conclusion anticipated by the Virginia court when it promulgated Rule 1:6. If new ground is to be plowed, I believe it should be done by the Supreme Court of Virginia.