PRESENT: All the Justices

LA BELLA DONA SKIN CARE, INC.

                                      OPINION BY

v. Record No. 161195              CHIEF JUSTICE DONALD W. LEMONS
                                    October 26, 2017

BELLE FEMME ENTERPRISES, LLC, ET AL.

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Frederick G. Rockwell, III, Judge

In this appeal of a civil action, we consider whether the Circuit Court of Chesterfield County ("circuit court") erred when it held, as a matter of law: 1) that a fraudulent conveyance under Code § 55-80 cannot serve as the predicate unlawful act needed to support a claim for statutory or common law conspiracy; 2) that a prima facie case of fraudulent conveyance cannot be established when the recipient is a third party creditor with a higher security interest; and 3) that successor liability claims must be proven by "clear and convincing" evidence. In addition, we consider whether the circuit court erred by concluding that the evidence was insufficient to impose successor liability.

I.   Facts and Proceedings

On May 20, 2015, La Bella Dona Skin Care, Inc. ("LBD") filed a third amended complaint against eleven defendants, including three former LBD employees, as well as those former employees' counsel, certain of their family members, and two competing spa businesses. The complaint sought damages and injunctive relief from the defendants as a result of their involvement in a series of allegedly fraudulent conveyances designed to avoid an outstanding judgment in favor of LBD.

*The Complaint*

According to the complaint, on September 28, 2012, LBD obtained a judgment against three of its former employees, Brooke Miller ("Mrs. Miller"), Molly Smoot ("Mrs. Smoot"), and Betty Gail Boyd ("Ms. Boyd"), and their competing business, Bon Air Med Spa, LLC ("BAM") (collectively, the "Judgment Debtors"), for misappropriation of trade secrets.[*] The Judgment Debtors were represented in the trade secret litigation by Mark Schmidt ("Schmidt"), an attorney with the law firm of Ayers & Stolte, P.C. ("Ayers & Stolte"). While the lawsuit was pending, the Judgment Debtors executed a $85,000 promissory note ("Note") in favor of Ayers & Stolte for past and future legal expenses. The Note was secured, in part, by an assignment of rights to BAM's assets. According to LBD's complaint, Ayers & Stolte demanded payment on the Note shortly after final judgment was entered against the Judgment Debtors, and then "declared the Note in default" a week later.

On October 17, 2012, Ms. Boyd's adult son, Anthony Boyd ("Anthony"), formed Belle Femme Enterprises, LLC ("Belle Femme"). Schmidt assisted with the creation and incorporation of the new business, and BAM paid him $350 for his services. Mrs. Miller's husband, Jason Miller ("Mr. Miller"), and Mrs. Smoot's husband, Dan Smoot ("Mr. Smoot"), subsequently acquired ownership interests in Belle Femme.

According to the complaint, BAM "apparently ceased doing business" upon the formation of Belle Femme, but "the public face of [BAM] did not change." Both businesses

---

[*] The initial lawsuit (hereinafter referred to as the "trade secret litigation") resulted in a considerable jury verdict against the Judgment Debtors for violations of the Virginia Computer Crimes Act and the Virginia Uniform Trade Secrets Act, as well as trover. That verdict was reduced to a final judgment against each of the Judgment Debtors for willful and malicious misappropriation of trade secrets. The aggregate amount of the final judgment totaled over $370,000, which included attorney's fees and punitive damages.

operated from the same location, under the same lease, and with the same employees, including Ms. Boyd, Mrs. Miller, and Mrs. Smoot. Belle Femme also operated under BAM's tradename, "Bon Air Med Spa," using the same telephone number, domain name, and internet blog. LBD's complaint alleged that, in essence, Belle Femme "was and is the same business" as BAM.

The complaint further alleged that beginning on October 18, 2012, "the individuals running [BAM] and Belle Femme made no effort to separate the assets belonging to [BAM] versus Belle Femme." The businesses' assets were instead "comingled and lumped together," and some of BAM's assets were fraudulently conveyed directly to Belle Femme without compensation. These fraudulently conveyed assets included "the customer appointments, relationships, and products used to serve those appointments that [BAM] misappropriated from [LBD]."

On December 5, 2012, Ayers & Stolte conducted an auction to sell BAM's remaining assets. The auction notice specified that only cash bids would be considered and that an immediate deposit would be required from successful bidders. Moreover, the auction schedule did not list "the customer appointments, relationships, and products used to serve those appointments." No representatives from BAM or Belle Femme attended the auction; "Ayers & Stolte itself was the buyer." According to the complaint, Ayers & Stolte's winning bid "was a credit bid against the Note, not the required cash bid."

Following the auction, Ayers & Stolte's "President or Manager," Charles E. Ayers, Jr., signed a Bill of Sale, which "seemingly shows a December 10, 2012 sale of the [BAM] Assets to Belle Femme." At that time, the price of the sale "was an unknown" and "apparently was not even discussed until . . . more than three months after the auction."

In March 2013, the individual Judgment Debtors, along with Anthony, Mr. Miller, and Mr. Smoot met at Ayers & Stolte's law offices, where a $40,000 promissory note payable to Ayers & Stolte was executed. Anthony, Mr. Miller, and Mr. Smoot signed the promissory note individually, and Anthony also signed the note on behalf of Belle Femme.

The complaint further alleged that, as of its filing, LBD had been "unable to collect more than a *de minim*[*is*] amount of the 2012 judgments entered against the [Judgment Debtors]." As a result, LBD filed this civil action in the circuit court against the Judgment Debtors, Belle Femme, Anthony, Mr. Miller, and Mr. Smoot (collectively, the "Belle Femme Defendants") as well as Ayers & Stolte and Charles Ayers, Jr. (collectively, "Ayers & Stolte"). LBD advanced eight counts, four of which are relevant to this appeal:

- Count I: Successor Liability;
- Count II: Fraudulent Conveyance under Code § 55-80;
- Count VII: Common Law Civil Conspiracy; and
- Count VIII: Statutory Conspiracy under Code §§ 18.2-499 and -500.

*Pre-Trial Proceedings*

The Belle Femme Defendants and Ayers & Stolte demurred to counts II, VII, and VIII, and subsequently moved for summary judgment as to count II. The circuit court sustained the demurrers to counts VII and VIII, and granted summary judgment as to count II.

The circuit court sustained the demurrers to counts VII and VIII on the basis that the complaint failed to state a cause of action for common law or statutory conspiracy to fraudulently convey assets under Code § 55-80. The court stated that the fraudulent conveyance statute only provides for "sanctions," which are fundamentally distinct from damages. Therefore, because tort damages were not available for the predicate unlawful act of fraudulent conveyance, the circuit court concluded that tort damages could not be obtained through a claim of conspiracy to commit that predicate unlawful act.

4

The circuit court dismissed count II on summary judgment because there was no "genuine issue of material fact" that Ayers & Stolte "held a senior lien on [BAM's] assets and were thus entitled to have the proceeds of the public auction." The court explained that LBD conceded this fact in responses to the following pre-trial requests for admission:

- Admit that, since on or about May 21,2012, Ayers & Stolte has had a lien against [BAM's] personal property. [**ADMIT**]

- Admit that the lien of Ayers & Stolte in [BAM's] personal property is a higher priority lien than any lien possessed by [LBD] in [BAM's] personal property. [**ADMIT**]

In light of these admissions, the court concluded that "[c]hoosing to repay a debt to one creditor with a higher priority security interest over another is simply not a fraudulent conveyance as to the third party creditor."

*The Bench Trial*

LBD's claim against Belle Femme for successor liability (count I) proceeded to a two-day bench trial that began on December 7, 2015. There, the Belle Femme Defendants introduced a copy of the Note that the Judgment Debtors executed in favor of Ayers & Stolte during the initial lawsuit. The Note reflected that the Judgment Debtors granted Ayers & Stolte a security interest in BAM's assets as collateral for the $85,000 loan. The Note further specified that it was "payable ON DEMAND."

Charles Ayers, Jr. ("Ayers") testified at trial that Ayers & Stolte filed a UCC-1 financing statement for the lien against BAM's assets with the State Corporation Commission. Ayers further testified that he signed the demand letter that was ultimately sent to BAM, and that BAM failed to "make payment in full pursuant to [the] demand." As a result, Ayers & Stolte declared default and sent a second letter "saying we're taking possession of [the] collateral."

5

According to Ayers' testimony, the firm initially allowed BAM to continue using the assets "[b]ecause if they were continuing to operate the business [] profitably, they could make payments toward their obligations and satisfy it." It was later decided, however, "[t]hat the assets were going to be sold at public auction." In turn, "the firm referred [the matter] to a trustee to foreclose . . . and he held a foreclose[ure] sale." Ayers testified that he did not personally attend the auction, but he sent Schmidt on behalf of Ayers & Stolte and "instructed him to open the bid at $10,000." Following the auction, Ayers' understanding was that, "because no one else bid more than $10,000," Ayers & Stolte "owned [BAM's assets] with the idea of disposing them." To that end, Ayers approved a sale of the assets for $40,000. In addition, Ayers signed the Bill of Sale, which he understood to "[t]ransfer the property [] purchased at auction to Belle Femme."

Anthony also testified at trial. According to his testimony, Belle Femme leased "the use of [] equipment . . . and supplies from Ayers & Stolte" for $1,000 per month pursuant to an oral agreement. He testified that Belle Femme began leasing the equipment when it was formed in October of 2012, and continued to do so until it purchased the assets from Ayers & Stolte.

After the evidence was presented, LBD submitted "Proposed Findings of Fact and Conclusions of Law" for the circuit court's review. LBD urged the circuit court to conclude that Belle Femme was subject to successor liability for two reasons. First, LBD argued that the transfer of BAM's assets to Belle Femme was "fraudulent in fact." Second, LBD argued that Belle Femme was a "mere continuation" of BAM.

The circuit court, upon "review and consideration of the parties' arguments, evidence, and 'Proposed Findings of Fact and Conclusions of Law,'" rejected LBD's claim for successor liability. In doing so, the court acknowledged that LBD's "primary contentions" were that the

6

transfer of BAM's assets to Belle Femme was "fraudulent in fact," and that Belle Femme was a "mere continuation" of BAM. The circuit court then found that LBD failed to meet its "burden of prov[ing] by clear and convincing evidence that the sale of [BAM's] assets to Belle Femme by Ayers & Stolte was not an arm's-length transaction or fraudulent." Accordingly, the circuit court concluded that LBD's "mere-continuation exception fails to apply and their claim for successor liability fails."

LBD subsequently appealed to this Court, and we granted an appeal on the following assignments of error:

1. The circuit court erred when – prior to trial – it granted summary judgment on La Bella Dona's fraudulent conveyance claim (Count II). The circuit court held that La Bella Dona failed to prove the defendants intended to "delay, hinder, or defraud a creditor" despite multiple badges of fraud, giving rise to a rebuttable presumption of a fraudulent conveyance.

2. The circuit court erred when – prior to trial – it sustained defendants' demurrer to La Bella Dona's conspiracy claims (Count VII and Count VIII) while ignoring allegations of financial damages as a result of the conspiracies among the ten defendants to fraudulently convey assets.

3. The circuit court erred when it applied an improper "clear and convincing" standard of proof to La Bella Dona's successor liability claim (Count I) at trial rather than a "preponderance of the evidence" standard.

4. The circuit court erred by rejecting La Bella Dona's claim at trial that Belle Femme was the continuation of Bon Air and liable for its successor's obligations, despite the unrebutted evidence that the most valuable assets of the [old] entity[, Bon Air,] passed to the [new] entity[, Belle Femme,] for no consideration.

7

## II. Analysis

### A. Fraudulent Conveyance

Ayers & Stolte and the Belle Femme Defendants maintain that the circuit court properly entered summary judgment dismissing LBD's fraudulent conveyance claim because LBD conceded that it was a junior lienholder relative to Ayers & Stolte. They argue that LBD's concession conclusively established that there was no fraudulent conveyance because Ayers & Stolte was entitled to foreclose on the assets. We disagree.

### i. Standard of Review

"[S]ummary judgment 'shall not be entered' unless no 'material fact is genuinely in dispute' on a controlling issue or issues and the moving party is entitled to such judgment as a matter of law." *Mount Aldie, LLC v. Land Trust of Va., Inc.*, 293 Va. 190, 196, 796 S.E.2d 549, 553 (2017) (quoting Rule 3:20). Accordingly, "in an appeal of a decision awarding summary judgment, the trial court's determination that no genuinely disputed material facts exist and its application of law to the facts present issues of law subject to de novo review." *Id.* at 196-97, 796 S.E.2d at 553. "[I]f the evidence is conflicting on a material point or if reasonable persons may draw different conclusions from the evidence," then the non-moving party is entitled to proceed to a trial on the merits. *Fultz v. Delhaize Am., Inc.*, 278 Va. 84, 88, 677 S.E.2d 272, 274 (2009).

### ii. The Circuit Court Erroneously Granted Summary Judgment

Virginia's fraudulent conveyance statute, Code § 55-80, targets transactions designed to place a debtor's assets beyond his creditors' reach. It states:

> Every gift, conveyance, assignment or transfer of, or charge upon,
> any estate, real or personal, every suit commenced or decree,
> judgment or execution suffered or obtained and every bond or
> other writing given with intent to delay, hinder or defraud

8

> creditors, purchasers or other persons of or from what they are or
> may be lawfully entitled to shall, as to such creditors, purchasers or
> other persons, their representatives or assigns, be void. This section
> shall not affect the title of a purchaser for valuable consideration,
> unless it appear[s] that he had notice of the fraudulent intent of his
> immediate grantor or of the fraud rendering void the title of such
> grantor.

Code § 55-80. This statute condemns transactions that would otherwise be lawful when they are "done with a vicious intent." *Davis v. Turner*, 45 Va. (4 Gratt.) 422, 429 (1848). Specifically, "[a] fraudulent intent concurred in by both grantor and grantee *always* vitiates a conveyance." *Hutcheson v. Savings Bank of Richmond*, 129 Va. 281, 289, 105 S.E. 677, 680 (1921) (emphasis added).

A creditor seeking to void a conveyance as fraudulent must prove, by "clear, cogent and convincing" evidence, that: 1) the grantor intended to delay, hinder or defraud his creditors, and 2) the grantee had notice of the grantor's fraudulent intent. *Id*. at 289-91, 105 S.E. at 680-81; *Bank of Commerce v. Rosemary & Thyme, Inc.*, 218 Va. 781, 784, 239 S.E.2d 909, 912 (1978). This evidentiary burden may, and often must, be satisfied with circumstantial evidence, as the participants in a fraud generally "are not apt to discuss it." *First National Bank v. Pressley*, 176 Va. 25, 28-29, 10 S.E.2d 526, 527-28 (1940).

The quantum of circumstantial evidence required to void a conveyance necessarily varies depending on the "peculiar facts and circumstances" of each case, but the law recognizes recurring scenarios from which fraud may be presumed. *Temple v. Jones, Son & Co.*, 179 Va. 286, 298, 19 S.E.2d 57, 62 (1942). These "presumptions of fraud, known as 'badges of fraud,' [] consist of facts and circumstances that establish a prima facie case of fraudulent conveyance." *Fox Rest*, 282 Va. at 284-85, 717 S.E.2d at 131-32. They include:

> (1) retention of an interest in the transferred property by the
> transferor; (2) transfer between family members for allegedly

9

antecedent debt; (3) pursuit of the transferor or threat of litigation by his creditors at the time of the transfer; (4) lack of or gross inadequacy of consideration for the conveyance; (5) retention or possession of the property by transferor; and (6) fraudulent incurrence of indebtedness after the conveyance.

*Id*. at 285, 717 S.E.2d at 132 (citations omitted). Proof of a single badge of fraud is sufficient to establish a prima facie case of fraudulent conveyance; once that prima facie showing is made, the burden shifts to the defendant to establish the bona fides of the contested transaction. *Hutcheson*, 129 Va. at 291, 105 S.E. at 681; *see also id.*; *Hickman v. Trout*, 83 Va. 478, 491-92, 3 S.E. 131, 136-37 (1887).

Viewed in the light most favorable to LBD, the evidence on summary judgment demonstrated that Ayers & Stolte and the Belle Femme Defendants participated in a series of transactions designed to place BAM's assets beyond LBD's reach. First, while the trade secret litigation was pending, BAM sought to protect its assets by executing the Note in favor of Ayers & Stolte. Then, following an unfavorable outcome in that litigation, Ayers & Stolte immediately foreclosed on those assets, before LBD could execute its judgment. Thereafter, Ayers & Stolte made no apparent effort to collect from the remaining Judgment Debtors and, instead, purchased the foreclosure assets via credit bid against the very loan that prompted foreclosure. Finally, Ayers & Stolte sold BAM's former assets to Belle Femme, a newly-formed business owned by its indebted clients' close family members.

This series of transactions supports an inference that the participants in each individual transaction were engaged in a larger scheme to fraudulently convey BAM's assets to Belle Femme via Ayers & Stolte. Reasonable minds could therefore differ as to whether the Judgment Debtors intended to "delay, hinder or defraud" LBD, and whether the Ayers & Stolte and Belle

10

Femme Defendants had notice of that fraudulent intent. Accordingly, the circuit court erred by dismissing LBD's fraudulent conveyance claim on summary judgment.

## B. Conspiracy to Fraudulently Convey Assets

In the second assignment of error, LBD challenges the circuit court's decision to sustain the demurrers dismissing its civil conspiracy claims predicated on the alleged fraudulent conveyances. The circuit court held that relief could not be granted upon the conspiracy claims because LBD asked for tort damages, "which are unavailable as to [] causes of action [for fraudulent conveyance]." We agree with the circuit court.

### i. Standard of Review

"A demurrer tests the legal sufficiency of a [complaint]," ensuring that the factual allegations set forth in the pleading are sufficient to state a cause of action. *Harris v. Kreutzer*, 271 Va. 188, 195-96, 624 S.E.2d 24, 28 (2006). If the pleading fails to state a cause of action, then the demurrer should be sustained. Our review of a trial court's grant of a demurrer is de novo. *Rafalko v. Georgiadis*, 290 Va. 384, 396, 777 S.E.2d 870, 876 (2015).

### ii. Conspiracy to Effect a Fraudulent Conveyance Is Not an Actionable Claim

A claim of civil conspiracy is not actionable in its own right. *See Gallop v. Sharp*, 179 Va. 335, 338, 19 S.E.2d 84, 86 (1942) ("The gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use unlawful means."). Instead, civil conspiracy is a mechanism for spreading liability among coconspirators for damages sustained "as a result of an [underlying] act that is itself wrongful or tortious." *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 215, 754 S.E.2d 313, 317 (2014); *see Gelber v. Glock*, 293 Va. 497, 534, 800 S.E.2d 800, 821 (2017) ("The object of a civil

11

conspiracy claim is to spread liability to persons other than the primary tortfeasor.").

Consequently, an action for civil conspiracy will not lie unless the predicate unlawful act independently imposes liability upon the primary wrongdoer. Only then can that liability be spread to the remaining coconspirators. *See Gelber*, 293 Va. at 534, 800 S.E.2d at 821.

Code § 55-80, however, does not impose liability upon the participants of a fraudulent conveyance. The statute merely "renders void every conveyance or transfer made 'with intent to delay, hinder or defraud creditors . . . of or from what they are or may be lawfully entitled.'" *Cheatle v. Rudd's Swimming Pool Supply Co.*, 234 Va. 207, 212, 360 S.E.2d 828, 830 (1987) (quoting Code § 55-80). This remedy returns the fraudulently conveyed assets to the transferor, but, as a general rule, it does not authorize "a court to award an *in personam* judgment when [the transaction] is set aside." *Mills v. Miller Harness Co.*, 229 Va. 155, 158, 326 S.E.2d 665, 667 (1985).

In *Price v. Hawkins*, 247 Va. 32, 439 S.E.2d 382 (1994), we recognized a narrow exception allowing *in personam* judgments against recipients of fraudulent cash transfers, but that exception imposes liability specifically upon a grantee and it cannot be imputed to other participants or coconspirators. The circumstances in *Price* justified the exception because cash cannot be easily "located for attachment or levy when the fraudulent transaction is declared void." *Id.* at 37, 439 S.E.2d at 385. Therefore, simply declaring the transaction "void" would have been "meaningless in terms of relief to the defrauded creditor." *Id.* We refused to "presume that the General Assembly intended to provide a § 55-80 cause of action without a remedy" and instead held that an *in personam* judgment against the grantee was appropriate. *Id.* at 37-38, 439 S.E.2d at 385-86. This placed the grantee "in the position of one holding for account of the debtor," which rendered "the grantee personally liable, on his account, for the

12

value of the original property in case he [could not] produce it or a substitute." *Id*. at 35-36, 439 S.E.2d at 384 (quoting 1 Garrard Glenn, *Fraudulent Conveyances and Preferences* § 239, at 415 (rev. ed. 1940) (internal quotation marks omitted)).  In effect, the remedy unwound the transfer of the cash in the grantee's pockets; it did not impose liability upon the grantee by virtue of his participation in the transaction.

Therefore, because avoidance of a transaction is the only remedy available under Code § 55-80, a claim for fraudulent conveyance is not a predicate unlawful act from which liability can be spread to others on a theory of civil conspiracy.  Accordingly, the circuit court did not err in sustaining the demurrers to LBD's conspiracy claims.

## C.  Standard of Proof for Successor Liability Claims

LBD's third and fourth assignments of error concern the circuit court's evaluation of its successor liability claim against Belle Femme.  Essentially, LBD argues that the circuit court applied the wrong standard of proof and then improperly found its evidence insufficient.  Because we agree that the circuit court applied the wrong standard of proof, we decline to independently assess the sufficiency of the evidence under the proper standard for the first time on appeal.

### i.    Standard of Review

"Questions relating to burden of proof, including the standard of proof and which party bears the burden to meet it, are questions of law reviewed de novo."  *Ballagh v. Fauber Enters.*, 290 Va. 120, 124, 773 S.E.2d 366, 367-68 (2015).

13

ii.     Mere Continuation May Be Proven by A Preponderance of the Evidence

The general rule in Virginia is that a company may acquire the assets of another company without assuming responsibility for its debts and liabilities.  There are four exceptions to this general rule:

> (1) the purchasing corporation expressly or impliedly agreed to assume such liabilities, (2) the circumstances surrounding the transaction warrant a finding that there was a consolidation or de facto merger of the two corporations, (3) the purchasing corporation is merely a continuation of the selling corporation, or (4) the transaction is fraudulent in fact.

*Harris v. T.I., Inc.*, 243 Va. 63, 70, 413 S.E.2d 605, 609 (1992) (collecting cases).

The burden of proof always rests with the party alleging successor liability, but the scope of that burden varies depending upon the exception claimed.  Claims that a "transaction is fraudulent in fact," like claims of fraudulent conveyance, require proof by clear and convincing evidence.  *See Hutcheson*, 129 Va. at 289, 105 S.E. at 680 (noting, "proof in cases of this character must be clear, cogent and convincing").  This heightened burden is appropriate because of the equitable nature of suits involving fraud.  *See RF&P Corp. v. Little*, 247 Va. 309, 318, 440 S.E.2d 908, 914 (1994).  But not all theories of successor liability invoke this equitable principle.

Where successor liability is alleged pursuant to the mere continuation exception, proof of the continuation may be established by a preponderance of the evidence.  A higher standard of proof is not warranted because the exception does not require a showing of fraud.  Indeed, the most critical element of a continuation is "[a] common identity of the officers, directors, and stockholders in the selling and purchasing corporations."  *Harris*, 243 Va. at 70, 413 S.E.2d at 609.  Aside from that, a litigant must simply establish that the asset transfer was not a "bona fide, arm's-length transaction."  *Id*.

14

In this case, LBD asserted two theories as a basis for imposing successor liability against Belle Femme. First, LBD argued that the transfer of BAM's assets to Belle Femme was "fraudulent in fact." Second, LBD argued that Belle Femme was a "mere continuation" of BAM. The circuit court, however, applied the same standard of proof to both theories, which led it to conclude that LBD failed "to prove by clear and convincing evidence that the sale of [BAM's] assets to Belle Femme by Ayers & Stolte was not an arm's length transaction or fraudulent." Accordingly, we hold that the circuit court erred by failing to apply the correct standard of proof to each of LBD's individual theories of successor liability. The correct standard of proof for successor liability claims premised on the mere continuation exception is by a preponderance of the evidence.

### III.    Conclusion

For the reasons stated, we hold that the circuit court did not err when it dismissed LBD's civil conspiracy claims on demurrer. However, we hold that the circuit court erred in granting summary judgment on LBD's claim for fraudulent conveyance and dismissing that count, and we further hold that the circuit court erred by applying a clear and convincing standard of proof to LBD's mere continuation theory of successor liability. Accordingly, we will affirm the judgment of the circuit court in part, reverse in part, and remand for further proceedings consistent with this opinion.

*Affirmed in part,*
*reversed in part,*
*and remanded*

15