**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-1531**

JOHN S. BENNETT,

        Plaintiff - Appellant,

    v.

JAMES GARNER; VIRTUS CONSULTING, LLC,

        Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Claude M. Hilton, Senior District Judge.  (1:17-cv-00574-CMH-TCB)

Argued:  December 13, 2018               Decided:  January 16, 2019

Before KEENAN, FLOYD, and THACKER, Circuit Judges.

Vacated and remanded by published opinion.  Judge Keenan wrote the opinion, in which Judge Floyd and Judge Thacker joined.

**ARGUED:**  Kevin M. O'Donnell, HENRY & O'DONNELL, PC, Alexandria, Virginia, for Appellant.  Thomas Wayne Biggs II, DYCIO & BIGGS, Fairfax, Virginia, for Appellees.  **ON BRIEF:**  Jeffery T. Martin, Jr., HENRY & O'DONNELL, PC, Alexandria, Virginia, for Appellant.  Daniel F. Izzo, DYCIO & BIGGS, Fairfax, Virginia, for Appellees.

BARBARA MILANO KEENAN, Circuit Judge:

John S. Bennett appeals from the district court's award of summary judgment in favor of his former employer, Virtus Consulting, LLC (Virtus), and its owner, James Garner (collectively, the defendants), in Bennett's action seeking to collect on a state court judgment entered against the defendants. The district court held that Bennett's claims were precluded under Virginia's doctrine of res judicata.

Upon our review, we conclude that Bennett's claims are not precluded, because Bennett could not have brought those claims at the time of his earlier litigation. Accordingly, we vacate the district court's judgment and remand for further proceedings.

I.

We present the facts in the light most favorable to Bennett, the nonmoving party, and draw all reasonable inferences in his favor. *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 150 (4th Cir. 2012) (citation omitted). Virtus is a Virginia limited liability company that provides consulting services to various financial institutions. Garner is the owner and sole member of Virtus. Bennett was employed by Virtus and worked as the principal contact for one of Virtus' largest clients.

In 2012, Garner began negotiations to sell Virtus' assets to the Solomon Edwards Group (SEG). Around the same time, the defendants and Bennett signed an agreement, in which Bennett agreed to assist in the sale in exchange for "sharing [in the] proceeds" from the sale (the Bennett Agreement). Under the Bennett Agreement, once the sale to SEG successfully closed, Bennett would receive a fixed cash payment made in quarterly

2

installments. The parties also agreed that Bennett potentially could receive two annual "earn out" payments, depending on whether SEG and Garner achieved certain revenue targets in the two years following the sale.

The sale of Virtus' assets to SEG successfully closed around the end of September 2012. In accordance with the Bennett Agreement, Garner made the first two quarterly installment payments to Bennett. But, in April 2013, the defendants ceased making any further payments, claiming that Bennett had breached his obligations under the agreement. Bennett, however, maintained that he was entitled to the remaining installment payments and the "earn out" payments.

The parties submitted their dispute to an arbitrator as required by the arbitration clause in the Bennett Agreement. During the arbitration proceedings, the defendants provided Bennett documents describing the structure of the SEG sale but did not produce any of Virtus' financial records or bank statements. In response to a request seeking those financial records, the defendants stipulated that the Bennett Agreement was properly executed and that the performance metrics triggering the "earn out" payments had been "met in full."

In September 2014, the arbitrator ordered Virtus to pay Bennett $387,500. Under the terms of the Bennett Agreement, the arbitrator held Garner jointly and severally liable for $125,000 of that award. The award was confirmed by a Virginia circuit court and reduced to a judgment. Although Garner paid the portion of the award for which he personally was liable, Virtus failed to pay the remaining $262,500.

3

After the arbitration award was confirmed, Bennett obtained Virtus' bank statements. These statements showed that shortly before the SEG sale closed, Garner had transferred substantially all of Virtus' cash reserves to himself. Further, Bennett learned that the SEG sale had been structured to divert all cash and other consideration from the sale to Garner personally. For instance, equity stock in SEG that was supposed to transfer to Virtus as part of the sale was instead listed in Garner's name and reported as part of Garner's personal tax returns. Thus, Virtus lacked sufficient assets to satisfy Bennett's judgment.

In May 2017, Bennett initiated the present action in the district court seeking to collect on his judgment. He asserted four claims against the defendants: (1) fraudulent conveyance, in violation of Virginia Code § 55-80; (2) voluntary transfer, in violation of Virginia Code § 55-81 (together, the fraudulent transfer claims); (3) a claim seeking to "pierce the corporate veil" and recover the judgment amount directly from Garner (the alter-ego claim); and (4) fraud in the inducement. The district court granted the defendants' motion for summary judgment, concluding that Bennett's fraudulent transfer claims and alter-ego claim were precluded under Virginia's doctrine of res judicata.[1] This appeal followed.

---

[1] The district court also awarded the defendants summary judgment on Bennett's fraud in the inducement claim, concluding that it was barred by the two-year statute of limitations governing fraud claims, Va. Code § 8.01-243(A). Bennett does not contest the dismissal of the fraud in the inducement claim.

4

II.

We review de novo the district court's award of summary judgment. *Rosetta Stone Ltd.*, 676 F.3d at 150.

A.

Before addressing the parties' arguments, we begin by reviewing the applicable principles of res judicata. In considering the preclusive effect of an earlier state court judgment on a new claim, we apply the "preclusion law of the State in which judgment was rendered." *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 127 (4th Cir. 2000) (quoting *Marrese v. Am. Acad. of Orthopedic Surgeons*, 470 U.S. 373, 380 (1985)). Here, the arbitration award was confirmed and reduced to a judgment by a Virginia court. We therefore apply Virginia's principles of res judicata.

In Virginia, res judicata[2] is governed by Rule 1:6 of the Rules of the Supreme Court of Virginia, which states in relevant part:

> A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, shall be forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended, or the particular remedies sought.

---

[2] Although Virginia's res judicata doctrine encompasses both claim preclusion and issue preclusion, here we use the term "res judicata" to refer to claim preclusion only. *See Funny Guy, LLC v. Lecego, LLC*, 795 S.E.2d 887, 890 (Va. 2017).

Va. Sup. Ct. R. 1:6(a). Under this rule, "a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Lee v. Spoden*, 776 S.E.2d 798, 803 (Va. 2015) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). Parties, therefore, may not relitigate "the same cause of action or any part thereof which *could* have been litigated in the previous action." *D'Ambrosio v. Wolf*, 809 S.E.2d 625, 628 (Va. 2018) (citation omitted). Stated simply, res judicata operates to prevent a party from getting a "second bite of the apple" with respect to wrongs arising from a single dispute. *See Funny Guy, LLC v. Lecego, LLC*, 795 S.E.2d 887, 890 (Va. 2017) ("The law should afford one full, fair hearing relating to a particular problem—but not two." (citation omitted)).

While ostensibly a broad proposition, res judicata nonetheless is limited by longstanding principles. For instance, claims brought solely to execute on a judgment are generally not precluded by prior litigation that resulted in that judgment. *See State Farm Mut. Auto. Ins. Co. v. Kelly*, 380 S.E.2d 654, 655 n.2 (Va. 1989); *see also Restatement 2d Judgments* § 18(c). Similarly, res judicata does "not bar a claim that does not *accrue* prior to the litigation triggering the bar." *Funny Guy*, 795 S.E.2d at 900 (emphasis added). A party is not precluded from bringing a claim that he was unable to bring in the initial litigation, regardless whether that claim constitutes part of the same "conduct, transaction, or occurrence." *D'Ambrosio*, 809 S.E.2d at 628; *Funny Guy*, 795 S.E.2d at 890 ("Determining which claims *should* have been brought in earlier litigation largely depends on which claims *could* have been brought." (citation omitted)); *see also Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955) (explaining that although an earlier

judgment "precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist"). With these principles in mind, we turn to consider the parties' arguments.

B.

As the parties asserting res judicata, the defendants bear the burden of showing that it is more likely than not that Bennett's claims should be precluded by the prior judgment. *D'Ambrosio*, 809 S.E.2d at 628. The defendants argue, as they did in the district court, that because Bennett had knowledge of the structure of the SEG sale at the time of the arbitration, Bennett *could* have raised both his fraudulent transfer and alter-ego claims during those proceedings. Accordingly, the defendants contend that under Virginia's doctrine of res judicata, Bennett *must* have brought those claims during the arbitration proceedings.

In response, Bennett generally maintains that his claims are brought solely in execution of his state court judgment. That is, instead of seeking to "relitigate" the defendants' liability under the Bennett Agreement, Bennett argues that his fraudulent transfer claims were an attempt to collect on the judgment he is owed and could not have been brought before the judgment was entered. With respect to his alter-ego claim, Bennett similarly argues that he could not have maintained that claim before obtaining the judgment against Virtus. We agree with Bennett and address each argument in turn.

1.

We begin by considering the question whether Bennett could have raised his fraudulent transfer claims during the arbitration proceedings. Actions brought under

7

Virginia's fraudulent conveyance statute, Va. Code § 55-80, and the state's voluntary transfer statute, Va. Code § 55-81, assist creditors in collecting on a judgment or other debt. *See La Bella Dona Skin Care, Inc. v. Belle Femme Enters., LLC*, 805 S.E.2d 399, 406 (Va. 2017); *Balzer & Assocs., Inc. v. The Lakes on 360, Inc.*, 463 S.E.2d 453, 455-56 (Va. 1995). Such actions do not impose liability on the participants in a fraudulent conveyance, but merely unwind "transactions designed to place a debtor's assets beyond his creditors' reach." *La Bella Dona*, 805 S.E.2d at 404, 406; *see also Mills v. Miller Harness Co.*, 326 S.E.2d 665, 667 (Va. 1985) (concluding that Virginia Code § 55-80 does not authorize a court "to award an *in personam* judgment when a fraudulent conveyance is set aside"). Indeed, Virginia law expressly permits actions under both Sections 55-80 and 55-81 to be brought after the entry of a judgment. Va. Code § 55-82.2 ("The court shall have the authority to set aside a fraudulent conveyance or voluntary transfer pursuant to § 55-80 or § 55-81 *during an action brought by a creditor to execute on a judgment*." (emphasis added)). Thus, actions to void wrongful transfers are remedies designed to "return[] the fraudulently conveyed assets to the transferor." *La Bella Dona*, 805 S.E.2d at 406.

In the present case, the disputes that the parties submitted to arbitration focused on the issue whether Bennett was entitled to receive the remaining payments under the Bennett Agreement. Thus, the arbitration served only to establish the parties' respective obligations and liability under the Bennett Agreement.

In contrast, Bennett's fraudulent transfer claims allege that Virtus depleted its corporate assets and made improper conveyances to Garner to prevent Bennett from

8

collecting on the arbitration award and judgment. Bennett does not advance any new legal "theories of recovery" on which either defendant could be held liable under the Bennett Agreement. *Cf. Funny Guy*, 795 S.E.2d at 897-98 (holding that, under principles of res judicata, "alternative theories of recovery" cannot be raised in consecutive lawsuits). Nor does he seek damages beyond the outstanding $262,500 judgment, the precise amount awarded in arbitration. Although the alleged wrongful transfers took place around the same time as the SEG sale, those transfers were immaterial to the question whether either Bennett or the defendants had breached the Bennett Agreement. Thus, Bennett is not seeking a "second bite of the apple" with respect to the amount he is owed. *See id.* Rather, he seeks only to unwind the allegedly improper transfers from Virtus to Garner so that Virtus can satisfy the existing judgment.[3]

Furthermore, we observe that had Bennett claimed that the defendants were attempting to defraud him by transferring assets, before he proved that he was entitled to payments under the Bennett Agreement, those fraudulent transfer claims would have been premature. At the time of the arbitration proceedings, Bennett did not have

---

[3] The defendants incorrectly rely on the Supreme Court of Virginia's decision in *Price v. Hawkins*, 439 S.E.2d 382 (Va. 1994), to argue that Bennett's fraudulent conveyance claim under Virginia Code § 55-80 is meant to impose liability on Garner. In *Price*, the court allowed an *in personam* judgment to be awarded against recipients of fraudulent transfers when the wrongfully transferred property was only cash. *Id.* at 385. This narrowly crafted exception was designed to prevent a defrauded creditor from being left without a remedy, because cash "cannot be easily located for attachment or levy." *La Bella Dona*, 805 S.E.2d at 406 (describing the exception in *Price*). However, the Supreme Court of Virginia has since clarified that the *Price* exception does not "impose liability upon the grantee[,]" but merely unwinds "the transfer of the cash in the grantee's pockets." *Id.*

sufficient information about Virtus' financial condition to allege a fraudulent conveyance or voluntary transfer. Neither defendant disclosed any financial records or bank statements to Bennett during the arbitration. Indeed, as noted above, rather than produce such documents, the defendants stipulated that the financial benchmarks in the Bennett Agreement had been "met in full."

It was not until Virtus failed to satisfy the judgment rendered against it, and Bennett received Virtus' relevant financial records, that he learned that Virtus had no remaining assets from which it could pay the judgment. These financial documents also disclosed the recipient of Virtus' transferred assets and the nature of such transfers, allowing Bennett to properly plead his fraudulent transfer claims. Thus, it was only after the state court judgment was entered that Bennett would have had "actual notice" of any potential fraudulent transfer claims. *Cf. Luria v. Bd. of Dirs. of Westbriar Condo. Unit Owners Ass'n*, 672 S.E.2d 837, 840 (Va. 2009) (recognizing that, while a judgment is not required to bring a fraudulent conveyance claim, a plaintiff must have "actual notice of a specific potential claim" to be considered a "creditor" under Virginia Code § 55-80).

On these facts, we hold that Bennett could not have brought his fraudulent transfer claims in the arbitration proceedings. To conclude otherwise essentially would have required Bennett to be clairvoyant. Under the defendants' logic, a plaintiff in Bennett's position would have had to amend his original complaint, adding claims of fraudulent conveyance whenever he suspected that the defendant was moving money to avoid paying a potential judgment. Otherwise, the plaintiff would risk having those claims barred in a later action to collect on that judgment. In other words, Bennett would have

10

had to try to enforce his judgment before the judgment was awarded. We decline to interpret Virginia's res judicata law in a manner that would lead to such untenable results. *See State Water Control Bd. v. Smithfield Foods, Inc.*, 542 S.E.2d 766, 769 (Va. 2001) ("The doctrine [of res judicata] protects litigants from multiple lawsuits, *conserves judicial resources, and fosters certainty and reliance in legal relationships*." (emphasis added)). Therefore, we hold that Bennett's fraudulent transfer claims are not precluded under Virginia's res judicata doctrine.

## 2.

With respect to Bennett's alter-ego claim, we similarly conclude that the claim could not have been brought before the state court judgment was entered against Virtus. When an individual uses a corporate form to "disguise wrongs, obscure fraud, or conceal crime," Virginia law permits a plaintiff to pierce the corporate veil and to impose liability directly on the individual as the "alter ego" of the corporation. *Cheatle v. Rudd's Swimming Pool Supply Co.*, 360 S.E.2d 828, 831 (Va. 1987). However, before bringing an action to pierce the corporate veil, the plaintiff must "first obtain[] a judgment against the corporation." *Dana v. 313 Freemason*, 587 S.E.2d 548, 553 (Va. 2003). Because Bennett was required to obtain a judgment against Virtus before bringing his alter-ego claim, this claim had not yet accrued at the time of the arbitration proceedings. Accordingly, we hold that Bennett's alter-ego claim also is not precluded under Virginia's doctrine of res judicata. *See D'Ambrosio*, 809 S.E.2d at 628.

## III.

11

For these reasons, we hold that Bennett's fraudulent transfer claims and his alter-ego claim are not precluded under Virginia law by res judicata.[4]  Accordingly, we vacate the district court's award of summary judgment in favor of the defendants and remand the case to the district court for further proceedings.

*VACATED AND REMANDED*

---

[4] Bennett also asks us to enter summary judgment in his favor on his fraudulent transfer claims.  Because the district court held that Bennett's action was barred by res judicata, the court did not rule on the merits of Bennett's claims.  We decline to consider those issues in the first instance.  *See Graham v. Gagnon*, 831 F.3d 176, 189 (4th Cir. 2016).