**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 24-2270**

———————

AMY KISSINGER-STANKEVITZ; N.J.A.B., a minor child born to Amy Kissinger-Stankevitz and David Frederick James Bailey,

      Plaintiffs - Appellants

v.

TOWN OF TAPPAHANNOCK, a town in the Commonwealth of Virginia; OLIVIA MARTIN, a/k/a Olivia Hurd, individually and in her official capacity as a police officer for the Town of Tappahannock, Virginia; DEANNE WALSH, individually and in her official capacity as Family Services Specialist for Essex County Department of Social Services; VINCENT DONOGHUE, individually and in his official capacity as Commonwealth Attorney for the City of Tappahannock, Virginia; JUDSON COLLIER; MARY CHILES, a/k/a Mary Hash; JACK CHILES; DAVID BAILEY,

      Defendants - Appellees.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Henry E. Hudson, Senior District Judge (3:23-cv-00364-HEH)

———————

Submitted: August 14, 2025                Decided: October 31, 2025

———————

Before NIEMEYER, WYNN and QUATTLEBAUM, Circuit Judges.

———————

Affirmed by unpublished opinion. Judge Wynn wrote the opinion, in which Judge Niemeyer and Judge Quattlebaum joined.

———————

**ON BRIEF:** Matthew J. Weinberg, INMAN & STRICKLER, PLC, Virginia Beach, Virginia, for Appellants. Andrew K. Clark, Anastasia Uzilevskaya, HIRSCHLER FLEISCHER, P.C., Richmond, Virginia, for Appellees David Bailey, M.D.; Mary Chiles;

and Jack Chiles, M.D.  Melissa Y. York, Brian P. Ettari, HARMAN CLAYTON CORRIGAN & WELLMAN, for DeAnne Walsh, Officer Olivia Martin, and the Town of Tappahannock.    William W. Tunner, John P. O'Herron, Peter S. Askin, THOMPSONMCMULLAN, P.C., Richmond, Virginia, for Appellee Vincent S. Donoghue.  Judson W. Collier, Jr., LAW OFFICE OF JUDSON W. COLLIER, Henrico, Virginia, for Appellee Judson Collier.

---

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

Under Virginia law, a civil conspiracy claim must be based on a defendant's predicate act that independently gives rise to a private right of action.

Here, Amy Kissinger-Stankevitz sued eight defendants—including her ex-husband, David Bailey—for allegedly conspiring to remove her son, N.B., from her custody. Kissinger-Stankevitz alleged four predicate acts: three of which—criminal destruction of a record, criminal perjury, and criminal barratry—do not independently impose civil liability; and the fourth—tortious interference with parental rights—is not supported by the evidence.

Thus, because Kissinger-Stankevitz did not allege predicate conduct that gives rise to an independent private right of action against defendants, we affirm the district court's dismissal of her Virginia common law civil conspiracy claims.

I.

A.

On this appeal from an order granting motions to dismiss under Rule 12(b)(6), we recite the facts in the light most favorable to Kissinger-Stankevitz. *Balogh v. Virginia*, 120 F.4th 127, 134 (4th Cir. 2024).

Kissinger-Stankevitz and Bailey married in 2011 and had a son, N.B., in 2013. In 2015, a Virginia court found that Bailey committed family abuse and ordered Bailey not to contact Kissinger-Stankevitz or N.B. for two years. In the years that followed, the couple engaged in contentious divorce and custody proceedings.

3

In 2019, during a deposition related to the divorce proceedings, Bailey admitted to showing pornography to N.B., then six years old. Kissinger-Stankevitz informed the Tappahannock Police Department about Bailey's admission, and the department assigned Officer Olivia Martin and Essex Department of Social Services ("Essex DSS") Agent DeAnne Walsh to investigate Bailey. Although N.B. confirmed the incident during a forensic interview, Officer Martin did not pursue criminal charges against Bailey.

In 2021, N.B. disclosed to a nurse at the Children's Hospital of the Kings Daughters that Bailey had sexually abused him. Under the guise of investigating this claim, Officer Martin and Agent Walsh met with Bailey, Bailey's parents, and Bailey's attorney, Judson Collier. Officer Martin recorded a portion of the meeting on her body camera but turned the camera off at some point during the meeting.

Allegedly, while the camera was off, the individuals in attendance conspired to generate false evidence against Kissinger-Stankevitz that Commonwealth Attorney Vincent Donoghue could use to bring criminal charges against her. Kissinger-Stankevitz alleges that Donoghue "authorized" and "condoned" Officer Martin's decision to turn her camera off to avoid capturing evidence of the conspiracy. J.A. 635.[1] She further asserts that Officer Martin and Agent Walsh encouraged Bailey to file a frivolous Child in Need of Services action against Kissinger-Stankevitz to intimidate her.

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

Subsequently, Kissinger-Stankevitz arranged an FBI interview for N.B., who made credible allegations of sexual abuse against Bailey. Based on this evidence, Essex DSS issued a finding of sexual abuse against Bailey.

A few days after that finding was made, Bailey filed a Child in Need of Services action against Kissinger-Stankevitz. That action was ultimately dismissed on summary judgment.

B.

On December 13, 2023, Kissinger-Stankevitz brought this action in the Eastern District of Virginia. She named Bailey, his parents, the Town of Tappahannock, Donoghue, Officer Martin, Agent Walsh, and Collier as defendants and raised ten causes of action under Virginia and federal law. As relevant to this appeal, Kissinger-Stankevitz alleged that Defendants committed common law conspiracy under Virginia law to "cripple [] Kissinger-Stankevitz mentally and financially . . ., force N.B. back into the unsupervised hands of his abuser, . . . [and] protect [] Bailey from criminal prosecution." J.A. 1528. The district court dismissed all ten of her claims.

On appeal, Kissinger-Stankevitz alleged that Defendants committed four predicate acts in furtherance of their civil conspiracies: (1) criminal destruction of a record, (2) criminal perjury, (3) criminal barratry, and (4) tortious interference with parental

rights.[2] The district court concluded that the alleged predicate acts weren't sufficient to support a civil conspiracy under Virginia law and dismissed Kissinger-Stankevitz's claims. Kissinger-Stankevitz timely appealed.

## II.

We review the order granting Defendants' motions to dismiss under Rule 12(b)(6) de novo. *Kashdan v. George Mason Univ.*, 70 F.4th 694, 700 (4th Cir. 2023).

## A.

In Virginia, a civil conspiracy is described as "a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means." *Hechler Chevrolet, Inc. v. Gen. Motors Corp.*, 337 S.E.2d 744, 748 (Va. 1985). Unlike criminal conspiracy, which can be inchoate, civil conspiracy requires proof of a completed predicate act. *Almy v. Grisham*, 639 S.E.2d 182, 188 (Va. 2007). Furthermore, under Virginia law, "civil conspiracy is not actionable in its own right." *La Bella Dona Skin Care, Inc. v. Belle Femme Enters., LLC*, 805 S.E.2d 399, 405 (Va. 2017). Rather, that tort is merely "a mechanism for spreading liability among coconspirators for damages

---

[2] Kissinger-Stankevitz alleged many more predicate acts in her Amended Complaint. She appeals only the district court's order dismissing her claims as to the two civil conspiracies predicated on four alleged acts: criminal destruction of a record in violation of Virginia Code § 18.2-472 (against Officer Martin), criminal perjury in violation of Virginia Code § 18.2-434 (against Collier and Mary and Jack Chiles), criminal barratry in violation of Virginia Code § 18.2-452 (against Officer Martin and Agent Walsh), and tortious interference with parental rights (against Officer Martin, Agent Walsh, Collier, Donoghue, Bailey, and Mary and Jack Chiles). We therefore limit our analysis to those claims because "[a] party waives an argument by failing to present it in its opening brief[.]" *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017).

6

sustained as a result of an underlying act that is itself wrongful or tortious." *Id.* at 406 (cleaned up) (citation omitted). So, "an action for civil conspiracy will not lie unless the predicate unlawful act *independently imposes liability* upon the primary wrongdoer." *Id.* (emphasis added).

Here, Kissinger-Stankevitz alleges that Defendants used unlawful means—the four predicate acts—to accomplish an otherwise lawful purpose. But none of these acts is legally sufficient to support her claim of civil conspiracy.

B.

Kissinger-Stankevitz's first three alleged predicate acts—criminal destruction of a record, criminal perjury, and criminal barratry—cannot support civil conspiracy because they do not independently impose civil liability.

The Supreme Court of Virginia has established that "an action for civil conspiracy will not lie unless the predicate unlawful act *independently imposes liability* upon the primary wrongdoer." *La Bella Dona*, 805 S.E.2d at 406 (emphasis added).

Kissinger-Stankevitz attempts to distinguish the allegations in this matter from those in *La Bella Dona*. She points out that Virginia civil conspiracy involves concerted action by two or more persons either to accomplish a criminal or unlawful purpose, or to accomplish, by criminal or unlawful means, a purpose that is not itself criminal or unlawful. *Hechler*, 337 S.E.2d at 748. Thus, she argues that *La Bella Dona* does not foreclose her reliance on an underlying act that does not establish civil liability because *La Bella Dona* involved a conspiracy to accomplish a criminal or unlawful purpose, whereas Kissinger-

7

Stankevitz alleged "a civil conspiracy for a lawful purpose using unlawful means." Reply Br. at 5.

But *La Bella Dona* draws no such distinction. And Kissinger-Stankevitz's reliance on *Hechler* fares no better. In *Hechler*, the plaintiff proffered the defendant's violation of the Virginia Motor Vehicle Dealer Licensing Act, which lacks a private right of action, as the predicate act supporting the civil conspiracy claim. *Hechler*, 337 S.E.2d at 748. But the court in *Hechler* did not reach the question of whether violating the statute would be a legally sufficient predicate act for civil liability; it simply determined that the plaintiff had not actually violated the statute.

Kissinger-Stankevitz nevertheless argues that proof that a crime was committed— even without demonstrating that that crime carries civil liability—can be a legally sufficient predicate act for civil conspiracy.[3] She cites *Virk v. Clemens*, which provides that "a successful civil conspiracy claim is not limited to proof of an underlying tort," but rather "is grounded in *either* tortious *or* unlawful conduct." 904 S.E.2d 651, 665 (Va. Ct. App. 2024). But although that language facially supports Kissinger-Stankevitz's argument, the *Virk* court ultimately held that the plaintiff had failed to adequately plead facts demonstrating that the defendants had engaged in conduct that was either tortious *or* unlawful. *Id.* at 667–68. So *Virk* is a thin reed for Kissinger-Stankevitz to lean on.

---

[3] We need not address the district court's conclusion that crimes cannot be predicates for civil conspiracy under Virginia law. In affirming the district court's decision, we simply apply Virginia law providing that there can be no action for civil conspiracy without an underlying predicate act imposing civil liability. *La Bella Dona*, 805 S.E.2d at 406.

And, at bottom, no language from the Court of Appeals of Virginia in *Virk* could overcome the requirement articulated by the Supreme Court of Virginia in *La Bella Dona* that the acts constituting a crime must *also* impose civil liability on the accused.

In sum, the alleged predicate acts of criminal destruction of a record, criminal perjury, or criminal barratry cannot support civil conspiracy because they do not independently impose civil liability. Accordingly, the district court properly determined that those acts cannot support Kissinger-Stankevitz's claim for civil conspiracy.

C.

Of the four predicate acts Kissinger-Stankevitz identifies in her opening brief, only tortious interference with parental rights independently imposes civil liability that could serve as a predicate act for civil conspiracy. *Wyatt v. McDermott*, 725 S.E.2d 555, 558–59 (Va. 2012) (recognizing tortious interference with parental rights as a cause of action in Virginia because "the common law right to establish and maintain a relationship with one's child necessarily implies a cause of action for interference with that right").

A claim of tortious interference with parental rights has four elements:

(1) the complaining parent has a right to establish or maintain a parental or custodial relationship with his/her minor child;

(2) a party outside of the relationship between the complaining parent and his/her child intentionally interfered with the complaining parent's parental or custodial relationship with his/her child by removing or detaining the child from returning to the complaining parent, without that parent's consent, or by otherwise preventing the complaining parent from exercising his/her parental or custodial rights;

9

(3) the outside party's intentional interference caused harm to the complaining parent's parental or custodial relationship with his/her child; and

(4) damages resulted from such interference.

*Padula-Wilson v. Landry*, 841 S.E.2d 864, 869 (Va. 2020) (quoting *Wyatt*, 725 S.E.2d at 562).

The Supreme Court of Virginia has clarified that tortious interference with parental rights requires that the child be removed from the parent's custody. *See Padula-Wilson*, 841 S.E.2d at 870 (Tortious interference with parental rights "applies only to a tortious interference [that] . . . 'abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody or not to return to the parent after it has been left him[.]'" (quoting Restatement (Second) of Torts § 700 (1997)).[4]

Here, Kissinger-Stankevitz retained physical custody of N.B. throughout the custody proceedings. In fact, she concedes that "the conspirators' attempts to take custody away from [her] were ultimately unsuccessful," complaining only that "their actions caused Kissinger-Stankevitz loss of companionship with N.B. by way of suffering through over 14 days of trial[.]" Opening Br. at 23. Because tortious interference with parental rights

---

[4] Kissinger-Stankevitz argues that removal of the child from physical custody of the parent is not a necessary element of tortious interference with parental rights, citing *Wyatt*, in which a mother allegedly conspired with an adoption agency to give her child up for adoption without the father's knowledge. 725 S.E.2d at 556–57. But in *Wyatt*, the father *was* deprived of physical custody: Utah courts had awarded custody of the child to the adopting family, and the child remained with that family throughout the proceedings. *Id.* at 557.

10

requires that the child be removed from the parent's custody, Kissinger-Stankevitz failed to allege civil conspiracy predicated on tortious interference with parental rights.

## III.

In sum, Kissinger-Stankevitz failed to allege a predicate act that independently imposes civil liability on any of the Defendants. Accordingly, the district court did not err in dismissing her civil conspiracy claims.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this Court and argument would not aid the decisional process.

*AFFIRMED*

11